GARBUTT *vs.* SMITH.

A creditor will not be allowed to suffer a deed to stand as conclusive evidence of the grantee's ownership of the land, and seize by attachment or execution the fruits of it, produced by the industry of such grantee, as the personal property of the grantor, and contest the validity of the conveyance of the land, in an action brought against him for such taking.

THE defendant, as sheriff of Monroe county, received an attachment issued against the property of Philip Garbutt, and by virtue of it levied upon a quantity of gypsum, or plaster. On the trial, at the circuit, the plaintiff gave evidence tending to show that the plaster was taken from ground conveyed by Philip Garbutt to him before the levy,

viz, in January, 1858. The rock was dug from the soil by the plaintiff, in the winter of 1860—was made by the plaintiff into plaster at his own expense. The plaintiff was, and had been since the conveyance, in the exclusive possession of the land, and Philip Garbutt had no connection whatever with the plaster. The value of the plaster consisted almost wholly in the labor and expense of the manufacture of the same, the rock in the ground being of trifling or no value.

The defendant offered to prove that such conveyance was made for the purpose of hindering, delaying and defrauding the creditors of Philip Garbutt in the collection of their debts; that the plaintiff was a party to the fraud, and received the conveyance with knowledge thereof, and to aid in effecting it. The evidence was excluded, and the defendant excepted.

The jury found a verdict for the plaintiff, assessing the value of the property at $300. The court, upon motion by the defendant, ordered the plaintiff's proceedings to be stayed until the decision of the exceptions, which were ordered to be heard in the first instance at the general term.

*M. S. Newton,* for the plaintiff.

*Geo. F. Danforth,* for the defendant.

*By the Court,* JOHNSON, J. The evidence offered, to show that the sale and conveyance of the farm to the plaintiff, by Philip Garbutt, was made for the purpose of hindering, delaying and defrauding the creditors of the latter, and was without consideration, was, I think, properly excluded, for several reasons.

1. It was not within any issue made by the pleadings. No equitable defense was set up in the answer, and no affirmative relief of any description prayed for. The answer justifies the taking and detention of the property, as the "goods and chattels of Philip Garbutt," and as a legal right

merely, by virtue of an attachment against him, in an action to recover a judgment upon a demand for money.

The plaster in question had never been the *goods or chattels* of Philip Garbutt. It was shown to have been taken in part from the farm occupied by the plaintiff, and which had been conveyed to him by Philip Garbutt, more than two years before it had been got out and converted into personalty, and before the seizure ; and in part from a farm occupied by William Garbutt, and which had been several years before conveyed to William by Philip. As to that portion which had been dug from the plaintiff's own land, the evidence when the offer was made had already shown that it had been part of the real estate of Philip Garbutt and conveyed by him to the plaintiff as such, two years before it was thus converted into personalty. And if it was ever so true that the conveyance of the land was fraudulent and void as to the creditors of Philip, the evidence to establish such fraud would not show, nor in any degree tend to show, that the plaster thus dug from the bed, and ground, or remaining unground, was, or ever had been, the goods and chattels of Philip Garbutt. All his right and title to it as real estate had been conveyed more than two years previously, and he had never had any other. There is nothing in the pleadings to raise or even suggest, any such question as fraud in the sale of land, and the evidence was properly excluded on that ground alone.

2. But had such a defense been interposed, and made out by the evidence, it would not have established the defendant's right to seize and sell the plaster in question on an attachment, or an execution, against Philip Garbutt. For although the statute declares all sales and conveyances of that character void as against the creditors of the person making them, they are valid as between the parties thereto, and also as against all other persons, until their invalidity has been determined by some judgment or decree to that effect. A creditor of the grantor may attack and avoid such a sale

and conveyance in two ways. He may obtain his judgment and perfect his title to the land, by sale on execution, and deed from the sheriff, and bring his action to obtain possession of the land and litigate the question of fraud in the sale in that action; or he may obtain his judgment and perfect his lien on the land, and bring his action in equity to avoid the conveyance and set it aside as against such judgment. But in such case, neither the judgment in the ejectment, nor the decree avoiding the deed, would give the creditors any title to property converted from realty into personalty, in the manner the plaster in question was converted, before the sale under the judgment, or the lien of the judgment on which the decree setting aside the deed was founded. The sheriff's deed would only relate back to the time of the sale on the execution, and give the creditor his remedy by action for waste committed on the land, or an action in the nature of trover for the conversion of property, between the sale and the receiving of the sheriff's deed. (2 *R. S.* 373, § 61. *Thomas* v. *Crofut*, 14 *N. Y. Rep.* 474.) His title to the land would give him no legal right or title to property converted by the fraudulent grantee from the realty into goods and chattels, before the sale.

In equity, a decree setting aside the deed as against the plaintiffs in the action in which the attachment in question was issued, would be equally unavailing to give them any right or title to the plaster. The decree would only set aside the deed so far as to let in the judgment obtained, leaving it to stand perfectly valid for all other purposes. And upon a sale of the premises to satisfy the debt under the decree, in such a case, it is quite doubtful whether the plaintiff would be required to account for the value of this plaster, even as it was i n the bed and as part of the land, much less for its value as enhanced by the plaintiff's labor and skill.. Certainly he would not be required to account without some evidence showing that the rights of the creditor had been or might be materially prejudiced by the conver-

sion from real into personal estate.  The creditor, while he remains merely a creditor at large, is not entitled to an account even for rents and profits of the land from a fraudulent grantee.   He can have such account, after he has established his right by judgment and procured a receiver to be appointed, only.   (*Robinson* v. *Stewart*, 10 *N. Y. Rep.* 189, 197. *Waterbury* v. *Westervelt*, 5 *Seld.* 598.  *King* v. *Wilcox*, 11 *Paige*, 589.)   And besides this, the creditor must establish his right to the property of his debtor by judgment, before he can proceed to take it, or enforce any claim against it, in the hands of even a fraudulent assignee or grantee. (*Reubens* v. *Joel*, 3 *Kern.* 488.)   Here the plaintiffs in the action in which the attachment was issued were mere creditors at large when they took the property, and the evidence shows that the value of the plaster consisted almost entirely in the labor bestowed upon it by the plaintiff.   It had no considerable value, as it was when the farm was conveyed to the plaintiff.   This is undisputed.   The rights of the creditors of Philip Garbutt had not therefore been injured or prejudiced in any such way as would entitle them to the fruits of the plaintiff's labor, in equity.   For aught that appears, or was offered to be proved, there is no necessity for a resort by them to this property, and a court of equity will not interfere with the transactions between grantor and grantee any farther than appears to be necessary for the protection of the creditors of the former.   It will be seen, therefore, I think, that no case was made, or offered to be made, which even in an equitable action, or upon an equitable defense, asking for affirmative relief, would have entitled the defendant to retain the plaster in question.   The defendant's counsel invokes the aid of the rule which prevails in actions brought by the owner of goods for a conversion thereof, against a tortious taker, in which he recovers the value of the article though enhanced by the labor and skill of the wrongdoer.   But that rule does not apply in a case like this. The plaintiff here is not a wrongful taker as against the law-

ful owner, but takes by purchase. He is a lawful holder and owner subject only to the equitable rights of the creditors of his vendor, and those rights, in the present case, would not deprive the plaintiff of the benefit of his own labor.

As to every thing which Philip Garbutt owned as personal property, and sold as such to the plaintiff, the defendant was allowed to give what evidence he could to establish fraud in the sale; which evidence was held by the jury to be insufficient to prove the alleged fraud.

3. Suppose the evidence offered had been allowed, and been sufficient to satisfy the jury that the sale and conveyance were without consideration, or otherwise fraudulent as respects the creditors of the grantor, what judgment could the court have rendered thereon? It could not have declared the deed void and proceeded to set it aside, because there was nothing in the pleadings upon which any such decree could have been founded. The whole defense rested simply in the allegation that the property seized was the personal property of Philip Garbutt liable to be taken by attachment, and sold on execution at the suit of his creditors and in satisfaction of his debts. No question of title to real estate was raised or hinted at. The deed would still have remained as conclusive evidence that the plaintiff was the owner of the land, and equally conclusive as to his ownership of whatever he might sever from the soil and convert into personal property; and I do not think a creditor can be allowed to permit a deed to stand as conclusive evidence of the grantee's ownership of the land, and seize by attachment or execution the fruits of it, produced by the industry of such grantee, as the personal property of the grantor, and contest the validity of the conveyance of the land, in an action for such taking. It would be in effect attacking the conveyance collaterally, and in a case where the judgment to be rendered could have no effect upon the conveyance. Such a proceeding would be wholly incongruous, and ought never to be allowed. A creditor might just as well, in the case of personal property alleged

to have been fraudulently transferred as against creditors, leave the property thus sold in the hands of the purchaser with the title thereto undisputed, and undertake to claim the product or increase of it only, and contest the validity of the sale of the property not claimed, in the action to recover such product or increase. I do not think this can be done. But whether it can or not, the evidence was properly excluded upon other grounds.

A new trial must therefore be denied.

[MONROE GENERAL TERM, June 2, 1863. *E. Darwin Smith, Welles* and *Johnson,* Justices.]