JASPER BELKIN, Defendant in Error, *vs.* GEORGE HILL, DAVID GRIFFIN, and THE LAMOTTE LEAD COMPANY, Plaintiffs in Error.

1. *Replevin—Indemnity bond—Officers, liability of—Statute, construction of.—* The taking of an indemnity bond from the plaintiff by an officer, who has seized property under an execution, does not release the officer, nor the plaintiff ordering or assenting to such action, from liability to a replevin suit by the owner of the property.

*Error to St. Francois Circuit Court.*

*John F. Bush,* for Plaintiffs in Error.

I. The taking of the indemnity bond by the officer released him from all liability to an action by the claimant who gave notice of his claim. (W. S., 607, § 28; 608, § 29; Stewart vs. Thomas, 45 Mo., 42; Stewart vs. Ball's Admr., 35 Mo., 209; State vs. Leutzinger, 41 Mo., 498; State vs. Doane, 39 Mo., 44; Bradley vs. Holloway, 28 Mo., 150; St. Louis, A. & C. R. R. Co. vs. Castello, 28 Mo., 379; State vs. Watson, 30 Mo., 122.)

The word "may" in section 29 (W. S., 608), beyond question, has an imperative force; imports an exclusive idea and creates an exclusive remedy. (Leavenworth & D. R. R. Co. vs. County Court of Platte Co., 42 Mo., 171; Steines vs. Franklin county, 48 Mo., 167.)

II. Beyond doubt the policy of this statute, the intention of the Legislature in the enactment of these provisions, was to protect officers against vexatious actions for seizure of property in the course of official duty. (Bradley vs. Holloway, 28 Mo., 150; State vs. Doane, 39 Mo., 44.)

III. The claimant has a clear option either to present his claim to the officer (under the statute and in pursuance of the provisions thereof), and thereby elect the remedy of an action on the bond, which the statute provides, or hold his peace, and by his silence retain his original remedies. (Stewart vs. Ball's Admr., 35 Mo., 209; Bradley vs. Holloway, 28 Mo., 150.)

IV. The statutes of 1855 contained a provision debarring claimants, who gave notice of their claims, from all actions

against officers after the taking of indemnifying bond, except in case of insolvency of bondsmen. (R. C., 1855, p. 744, § 2.)

The present statutes contain no express repeal of this section, nor was there any such repeal by implication without manifest repugnancy of provision, which nowhere appears. The law never favors repeals by implication and allows such repeals only for manifest repugnancy. (Sedg. Stat. & Const. Law, 123–127; Dev. Stat., 533; Deters vs. Renick, 37 Mo., 597; State vs. Judge of St. Louis Probate Court, 38 Mo., 529; State vs. Draper, 47 Mo., 29.)

V. The 32d section of the statutes of 1855 was surplusage, an embodiment or expression of the legitimate effect of the preceding sections.

*W. N. Nolle,* for Defendant in Error.

I. The provisions in the execution law of 1855 were expressly repealed by the revised statutes of 1865. (W. S., 896, § 2.)

II. The cases cited by defendants arose under the statute of 1855, or under a local law specially applicable to the County of St. Louis.

III. The bond to be taken after notice of claim shall be for the full indemnification of the officer making the seizure, and not to indemnify particularly the claimant. (W. S., 607, § 28.) Hence, the reasonings of this court as applied to the local act, or execution law for St. Louis county, in the several cases arising thereunder, do not apply to the execution law of 1865. The general execution law of 1865 does not exempt the officer making the seizure from liability.

NAPTON, Judge, delivered the opinion of the court.

This action is replevin to use the name by which it was known before the adoption of our practice act, or a suit for the delivery of personal property, as it is termed in the 6th article of this act. It was originally brought in Madison county and was against the sheriff and his deputy, and, before its removal to St. Francois county, the Mine LaMotte

Lead Company was, on its application, made a defendant, and afterwards on the application of said defendants, and the affidavit, required in such cases, by the Company or its Secretary, it was removed to and tried in St. Francois county.

The action is for the delivery of a horse to the plaintiff, which had been levied on as the property of one Herzinger on a judgment and execution in behalf of the LaMotte Lead Company against said Herzinger.

The question of the title to the property was submitted to a jury on instructions, and upon evidence, to which no serious objections have been urged, and therefore the finding in this respect must be held right, and the only point in this case relates to the proper construction of our present execution law, which is found in the Revised Code of 1865, pp. 607, 608, §§ 28, 29.

There was an indemnifying bond given to the sheriff by the Mine LaMotte Lead Company, and it is claimed that a suit on this bond by the claimant is the proper and only remedy which he has, and that the officers, the sheriff and his deputy, are exempted by the statute from any liability to an action.

That this exemption existed under the General Statutes of 1855, and under the special acts which regulated the subject in St. Louis county, is conceded. Various decisions of this court are cited to show this, and it is argued now, that the law of 1865 is substantially the same, and was so intended by the Legislature.

But it will be seen, that the laws are materially different in several respects. Under the laws of 1855, and previously, (p. 742, § 26) the claimant was required to make known his claim to the sheriff in writing, verified by affidavit, and the notice to the plaintiff was required to be in writing.

The present act (R. C., 1865, p. 607, § 28) allows the claim and notice to be verbal.

The act of 1855 then allowed the sheriff to summon a jury to try the right of property, and the verdict of this jury was a comqlete indemnity to the officer, however the issue was

found, except that (p. 743, § 30) if the plaintiff in the execution would give bond with security, the officer was compelled to proceed with the sale. This bond was upon condition, as it now is, "to indemnify him from all damages and costs which he might sustain in consequence of the seizure and sale of the property on which the execution was levied, and also to pay and satisfy, to any person or persons, claiming title to such property, all damages which such person or persons might sustain in consequence of such seizure." And this bond the officer, as now, is required to return with the execution, and the claimant was allowed, as now, to prosecute a suit on such bond in the name of the officer. Further than this, section 32 (p. 744) proceeds to declare, that " after the execution of such bond the claimant shall be barred of his right of action against the officer, unless the obligors in the bond shall have been insolvent at the time such bond was executed."

It will be perceived, that the statute of 1865 differs from that of 1855 in several respects. In the first place no written notice to the sheriff is required, nor any affidavit of the claimant. Again, inquisitions by the officer to try the right of property are entirely dispensed with. Again, the statute of 1865 does not require the sheriff or any other officer peremptorily to sell when a bond is offered, though it may be inferred from the directions to him to file it in the court with the execution, that such was its intent. But chiefly, although the bond is, as in the act of 1855, one to indemnify the sheriff and claimant also, and allows the claimant to sue on it, there is no such provision in the act of 1865 as in the act of 1855, that this bond, provided the securities are good, shall prohibit any action of the claimant against the officers.

It is urged, that the last provision was omitted by mistake or oversight. It may be that it was, or it may be that it was purposely omitted. Very plausible reasons may be given why it should have been omitted intentionally, and reasons equally plausible may suggest themselves why its omission was accidental. But the fact is it was omitted, and there is

no such provision now in the law. That such would not be the law without a positive statutory enactment is clear. An indemnifying bond was common under the common law practice, and the sheriff could take one, and it was no doubt valid. But the only effect of such a bond was to give the sheriff sufficient security, and of this he was the judge, to protect him against the result of suits which claimants might bring against him. The claimant had no concern with it; he could not use it to sue for his benefit, and he was obliged to resort to such actions against the parties to the trespass as the common law afforded him.

The statute offers him another mode of redress, and the statute of 1855 deprives him of all remedy against the officers. That statute is repealed to a large extent, and although the law now still gives him the privilege of the indemnifying bond, it does not take away from him any other rights which existed at common law. The right to sue the sheriff or his deputy, and the plaintiff in the execution, if he ordered or assented to the sale, is a right which always existed, except when positively prohibited by statute; and, although at one time there was a positive prohibition, there is none now. For this court to say now, that there ought to be, or that the Legislature intended there should be, although no such intention is expressed or necessarily implied from the law, would be mere judicial legislation, and it would be further necessary to determine, if the law should be held to be re-enacted, whether the qualification annexed to it in the act of 1855 was or was not also intended.

We think the decision of the Circuit Court on this point was correct. It may further be observed, that the liability of the Mine LaMotte Company is also very clear at common law, apart from the bond given by it, if they assented to the sale or ordered it; and as this company voluntarily made themselves a party to the action, besides giving a bond to the sheriff, the inference is plain, that they did assent to or direct the levy and sale, and were willing to shoulder the responsibility. So that even if the judgment had been erro-

neous, so far as the sheriff and his deputy are concerned, there is no ground for reversing it as to the Mine LaMotte Company, one of the defendants, unless upon a technical ground, of doubtful validity now, that a judgment was an entirety, and, if reversed at all, must be reversed as to all the parties.

The judgment is affirmed, all the Judges concurring.