THE STATE *ex rel.* MASTIN v. MCBRIDE *et al., Appellants.*

1. **Sheriff**: INDEMNIFYING BOND: CLAIMANT OF PROPERTY, WHEN NOT LIMITED TO. In the absence of statutory prohibition, the claimant of property levied on by a sheriff, and as to which an indemnifying bond has been given the officer, is not restricted to his remedy on the bond, but may sue the sheriff for the trespass or conversion.

2. **Statute, Construction of.** The provisions of the Revised Statutes of 1879, do not prohibit such common law action against the sheriff for trespass or conversion, where an indemnifying bond has been given.

3. **Fraudulent Conveyance**: EVIDENCE. Where mines are sold under a deed of trust, and ore taken therefrom after such sale is levied

on and sold by the sheriff under execution in favor of a judgment creditor of the grantor in the deed of trust, and the purchaser at the sale, under the trust deed, brings suit for conversion against the sheriff, it is competent for the latter to impeach the sale under the deed of trust as fraudulent and void, and to show that the mines, after the sale, were carried on by the grantor for his own use, although in the name of the purchaser, and that the ore levied on, was in truth, the property of the grantor.

*Appeal from Jasper Circuit Court.*—HON. M. G. McGREGOR, Judge.

REVERSED.

*Galen Spencer* and *C. H. Montgomery* for appellants.

The court committed error in striking out the defense that plaintiff's remedy was restricted to an action on the indemnifying bond. *State to use, etc., v. Leutzinger,* 41 Mo. 500; *Goldsoll v. Watson,* 30 Mo. 122; *Broadley v. Holloway,* 28 Mo. 150. The court erred, also, in sustaining the objections to defendant's testimony, and in directing the jury to find for plaintiff. In questions of fraud a wide range is allowed; any fact, however slight, if at all relevant to the issue, is admissible. Bump on Fraud. Convey., pp. 541, 542, 543, 544, 549, 507, 559; *Blue v. Pennison,* 27 Mo. 272. Land purchased in the name of another, may be levied on and sold under execution at the instance of any creditor. *Dunnica v. McCoy,* 24 Mo. 167. A fraudulent conveyance is void at law, as well as in equity. *Allen v. Berry,* 50 Mo. 90.

*Phelps & Brown* for respondent.

The taking of the bond by defendant did not prevent plaintiff suing the sheriff for wrongful levy. *Belkin v. Hull,* 53 Mo. 492. The court below properly excluded the testimony offered to show that the sale under the deed of trust was fraudulent, as the plaintiff had a valid title even if the sale was fraudulent, until the creditors of the North Center

Creek Mining & Smelting Company defeated it in due course of law, and when defeated, it is not rendered void *ab initio,* but only from the time of the levy of the execution under which the property is sold. Bump on Fraud. Convey., 465. For that reason a creditor cannot levy upon property which the fraudulent grantee has converted from realty into personalty, as, for instance, plaster dug from the ground, or stone taken from a quarry. *Jones v. Bryant,* 33 N. H. 53; *Garbutt v. Smith,* 40 Barb. 22; *Pierce v. Hill,* 35 Mich. 194; Bump on Fraud. Convey., 465. The mineral levied on by the defendant in this case having all been dug from the ground after the plaintiff took possession under his purchase, it was not subject to levy on an execution against plaintiff's grantor. A sheriff cannot institute a creditor's suit to reach the proceeds of property fraudulently conveyed, and the proceeds of such sales are not subject to levy and sale on execution against the fraudulent grantor. *Lawrence v. Bank of Republic,* 35 N. Y. 320. It is conceded, if not, the evidence shows, that the zinc ore levied upon by Sheriff McBride, in this case, was not in existence at the time of the alleged fraudulent purchase or conveyance. It had at no time been the personal property of the grantor. It could not, therefore, have been subject to levy, at the time of conveyance to and purchase by relator. True, it was mined upon the land claimed to have been fraudulently conveyed, but no act of the grantors contributed in any way or part to its production, and a creditor cannot stand by and permit the fraudulent grantee to retain the lands, and yet claim the proceeds thereof produced wholly by the labor or at the expense of the grantor.

MARTIN, C.—This was an action against a sheriff and his sureties, upon his official bond, for the value of certain zinc ore, seized by him under an execution in favor of one N. M. Barney, and against the North Center Creek Mining and Smelting Company. It is alleged in the petition, that

said sheriff seized said ore in August, 1880, and sold the same to plaintiff on the 1st day of September, 1880, as the property of said company, to the damage of plaintiff in the sum of $2,776, who was the owner thereof at the time of the seizure and sale.

The answer consisted of a general denial of all matters not subsequently admitted. By way of special defense, it charged that the plaintiff's pretended title was in fraud of creditors, setting up the facts constituting the fraud. It is alleged that the corporation was composed of Thomas H. Mastin, John J. Mastin, Major Henning, Mrs. Henning, Amanda Toms, and one Williams, and that Thos. H. Mastin was president, and William Toms, secretary; that the company was heavily in debt, and that its mining property, of the value of $100,000, was subject to a mortgage in favor of John Wahl & Co., of St. Louis; that the officers and directors of the company, with the intent to defraud the creditors, procured a sale of the property under the deed of trust to David C. Mastin, brother of the president, for the inadequate value or price of $4,180; that said David C., in this purchase by him, acted as the agent for the company, accepting the property and holding it for them and to their use; that after the purchase by Mastin (D. C.) the company retained possession of the lands, mines and machinery, and took out the ore as before. It is added that at the time of the levy and sale by the sheriff, said David C., was not the owner of the zinc levied upon, nor in possession of the same, but that the company was the owner thereof, and in possession of the same. Another defense was pleaded to the effect that, after the seizure by the sheriff, the plaintiff made claim for said ore under the statute; that in response to his claim the sheriff received a good and sufficient indemnity bond from the execution creditor, by reason whereof it is claimed, that the plaintiff cannot maintain this suit, but must pursue his remedy on the said bond. On motion of the plaintiff, this defense about the acceptance and return into court of an indemnity bond was stricken out against

the objections and exceptions of defendants.  The reply of plaintiff was a general denial of the new matter contained in the answer.  The case was tried by a jury.  When the defendants came to their evidence the court excluded it all, except such as related to the value of the property.  Then, upon the evidence as produced by plaintiff and defendants, the court instructed the jury to find for plaintiff, and their verdict was so rendered, upon which judgment was entered in the sum of the penalty of the bond, with right to execution for the damages assessed in the sum of $2,501.16, from which the defendants appeal.  It will be seen from this statement, that the record presents two questions for us to determine.  One of them arises from the action of the court in striking out the portion of the answer relating to the indemnity bond; the other springs from the exclusion of the evidence offered by defendants.

It has been held in several decisions of this court, construing our execution laws, that when a claim was made and a bond furnished in response to the claim, the officer making the levy was protected against any action at the instance of the claimant, whose remedy was restricted to the bond.  *State to use Goldsall v. Watson*, 30 Mo. 122; *State to use McMurray v. Doan*, 39 Mo. 44; *Bradley v. Holloway*, 28 Mo. 150; *State to use Daggett v. Loutzinger*, 41 Mo. 498. It will be found on examination of these decisions, that they were rendered in the construction of enactments which prohibited suits against the sheriff, upon said compliance with their provisions, relating to claims and indemnifying bonds.  The subsequent case of *Belkin v. Hill*, 53 Mo. 492, was rendered under a statute which was wanting in any such prohibiting clause; and the court held that in the absence of express prohibition, the claimant was not restricted to his remedy on the bond, but might sue the sheriff for the trespass or conversion.  This decision was in construction of the statutes of 1865, and rests upon the principle that the action against the sheriff remains in all cases, unless taken away by statute.  The revision of 1879

will have to be construed in obedience to this principle. In examining its provisions on the subject, none will be found expressly prohibiting suit against the sheriff. The next inquiry is, whether sections 2366 and 2367 impliedly prohibit the action. These provisions are new and somewhat unusual. If they, in fact, afford an adequate and complete remedy, to the claimant, the argument that they were intended to supersede all other remedies might then be entertained. But if they fail in this, then the argument that the common law action against the sheriff and his sureties is denied to the claimant by implication fails.

It will be observed that these sections contemplate two bonds after claim has been made; one by the execution creditor to indemify the sheriff and the claimant, the other by the claimant who desires to take possession of the property upon his forthcoming obligation. It is next provided that the sheriff shall return the claim, and the bonds into court on, or before return day of the execution. The clerk is required to enter the matter upon the docket as civil cases are docketed, and it is provided, that "the matter shall, unless continued for cause, be tried at the term at which the claim is returned." The act provides for pleadings, in respect to the claim by answer, demurrer and reply. It, also, directs the nature and form of the judgments to be rendered. This is a very extraordinary addition to our execution statutes, and it might be instructive as well as interesting to know whence it came. It evidently contemplates a special suit, or proceeding upon the claim returned into court, which is made to take the place of a petition, to be answered or demurred to like any other statement of a cause of action. Viewed in this light, the question arises whether an independent action on the bond will lie while this summary proceeding remains undisposed of.

It is evident that this summary, or supplemental proceeding does not contain or furnish a remedy equivalent to the common law action which it is claimed to supersede. It declares that "if the judgment shall be in favor of the

claimant, the court shall by its order direct the officer to release such property to the claimant, and shall enter judgment for costs against the execution creditor and his sureties." If the property has not been bailed by the claimant, and the officer has gone on and sold it, as in this case, what good will the order of release and judgment for costs against the execution creditor and his sureties be to the claimant. A suit of some kind would be necessary in order to realize anything on his claim. The section goes on to say "if the judgment shall be for the execution creditor, it shall be against the claimant, and his sureties in like manner, and the court shall order the property sold, and a certified copy of such order shall be delivered to the officer, and shall have the force of, and be proceeded upon as special execution." Evidently there can be no judgment of this character in favor of the execution creditor when the claimant has furnished no forthcoming bond, and the creditor has gone on and sold the property under his execution. Indeed, the statute does not purport to make this summary remedy exclusive of all other remedies, for in section 2366 it is provided that "such bonds may be sued on at the instance of any person injured in the name of state to the use of such person for any breach of the condition of such bonds." While it thus appears that the summary, or supplemental proceeding on execution does not exclude an independent action on the bond, the right of action so permitted on the bond does not purport to be exclusive of other forms of action, and resort to it is not obligatory on the claimant. The section provides only that "such bonds may be sued on." The learned gentlemen, composing the joint committee of revision, could not have regarded these sections as excluding the right of independent action in trover or replevin; otherwise they would not have included in their notes of illustration the case of *Belkin v. Hill*, 53 Mo. 492, which sustains such right of action in the claimant, and omitted the former cases as authorities tending to support the contrary doctrine. I am satisfied that there is no ex-

'press or implied interdiction of the common law right of action against the sheriff, in a case like the present one.

In considering the action of the court in excluding the evidence offered by defendants, it will be necessary first to notice the evidence submitted by plaintiff in support of his title. The mortgage to Wahl & Co., and the sale under it to David C. Mastin of November 24th, 1879, as well as the levy and sale under execution by the sheriff, seem to be admitted as formal facts by both sides. The plaintiff introduced William Potter as a witness, who testified that prior to March, 1878, he had been in the employment of T. H. and J. J. Mastin, in the Mastin Bank; that in March, 1878, he went into the employment of the Mining & Smelting Company referred to in the pleadings, and kept their books till August, 1878, when Mr. Wilcox took charge and he left; that after the sale to D. C. Mastin of November 24th, 1879, he in pursuance of an employment by D.C. Mastin, repaired to the mining property November 27th, 1879, in company with J. J. Mastin, formerly president of the corporation; that witness became bookkeeper and J. J. Mastin manager; that witness handled all the money, and acted at all times under the immediate direction of J. J. Mastin, who attended to the hiring and discharging of men; that witness reported part of the time to J. J. Mastin, part of the time to Thos. H. Mastin, and part of the time to D. C. Mastin; that J. J. Mastin remained at the works till May 1st, 1880, and that witness never saw D. C. Mastin at the works while he was there; that witness was present at the time of the levy and sale by the sheriff, and was in charge of the works at Webb City; that the zinc ore levied upon was the property of D. C. Mastin; that said D. C. Mastin was in possession thereof; that the mineral levied upon consisted of the last mineral taken out of the mines before they stopped working them May 1st, 1880; that the mineral levied upon had been taken out in March and April, 1880; that the mineral levied upon by the sheriff in August, 1880, was sold September 1st, 1880; that after witness

left the works, the ground was leased to Wm. Toms by J. J. Mastin, as agent of D. C. Mastin, who was not present at the time. This was, in substance. the evidence of plaintiff on his right of property.

The defendants then offered evidence, which, they claim, tended strongly to impeach the sale under the deed of trust, as fraudulent and void, and to show that the mines were, after the sale, carried on by the company for its own use, although in the name of D. C. Mastin, and that the ore levied upon was, in truth, the property of the company. The plaintiff objected to this evidence, contending that, even though the sale under the deed of trust was fraudulent as to creditors, between the parties it would have to be treated as valid by creditors, until it was attacked by them in a proper proceeding; and that as the sheriff was not proceeding against the land, such products belonged to the purchaser at the sale, and were not subjected to execution directed against the company, which may have been a fraudulent grantor. It may be conceded that the issues and products derived from land fraudulently conveyed as to creditors, do not, as a matter of course, belong to the fraudulent grantor, if they have been derived after the conveyance. Presumably they belong to the grantee as the result of his labor and capital, which were never subject to process against the grantor. For that reason such subsequent issues and products have usually been treated as exempt from execution against the fraudulent grantor of the land. *Garbutt v. Smith*, 40 Barb. 22; *Jones v. Briant*, 13 N. H. 53; *Peters v. Light*, 76 Pa. St. 289; *Lawrence v. Bank*, 35 N.Y. 320; *Heywood v. Brooks*, 47 N. H. 231. But presumptions of this character are not conclusive. The point in issue was, whether the fraudulent grantor was in truth, interested in the subsequent issues and products of the mines. Any fact or circumstance tending to prove that the ore, lifted from the mines after the sale, belonged to the company notwithstanding the *prima facie* import of the deed of sale to the contrary would be competent evidence. There is no

reason for holding that the creditor should be estopped in the submission of any competent evidence by a deed to which he is no party. It is clear, therefore, that if the evidence offered by defendants could have no other effect than to impeach the sale of the mines, as fraudulent, it was properly excluded, because the defendants had not levied upon the mines, nor sought to subject them in any manner to their execution. But if the evidence, tending to impeach the sale of the mines as fraudulent, was of such character and import as also to involve the actual title to the subsequent products, then it was clearly competent for the purpose for which it was offered. The sale itself, notwithstanding its outward form and solemnity, may have been effected, not only for the purpose of placing the mines beyond the reach of creditors for the secret use of the company, but for the purpose of enabling the grantor to receive and enjoy to his own use, the subsequent issues and products of the mines. In other words, the facts and circumstances attending the sale of the mines may furnish competent and convincing evidence as to the ownership of the issues and products after the sale. Such would be the case when it appears from the evidence that the sale was effected for the purpose of affording a mere cover for the subsequent use and enjoyment of the land, and receipt of its rents and issues. The defendants, in maintaining their levy upon such issues and products, ought not to be estopped, by the grantor's deed, from showing that the mines remained in the possession of the company, although apparently in the possession of another, and that they were worked with its capital and for its benefit.

In the case of *Lackland v. Garesche*, 56 Mo. 267, wherein it was attempted by garnishment process to compel the trustee of real estate to pay over the rents and profits therefrom, as belonging to the attachment debtor, it was conceded by the court that the garnishee would be answerable for such rents and profits upon proof that the conveyance, under which he received them, was fraudulent as to cred-

itors; Judge Adams remarking, "it is competent, under our statute, to summon a fraudulent assignee of property and effects and compel him to disgorge in favor of a creditor. For when such issue is found in favor of the creditor, no trust exists, and the property or effects can be delivered over without any trouble to satisfy the debt." In *Fury v. Strohecker*, 44 Mich. 337, Marston, C. J., says: "When, however, the debtor for the purpose of defrauding his creditors, makes a conveyance of his real estate, yet retains the possession, or receives the rents, issues or profits thereof in whole or in part, the mere fact that the grantee is the ostensible owner of the farm or its products, or that the crops had not been sown or planted at the time of the fraudulent conveyance, should not deprive the creditor of his right to resort to the crops, at least to the extent of the fraudulent grantor's interest therein, in satisfaction of his debt.". The case of *Dodd v. Adams*, 25 Mass. 398, recognizes a broader application of the same doctrine.

It is contended by plaintiff that the evidence excluded does not tend to prove that the mines were sold, at the instance of the company, at the trustee's sale, or purchased and held by the plaintiff to the use of the company. I have examined the evidence excluded and the offers of evidence ruled upon, and I am unable to concur with the learned counsel of plaintiff in this interpretation. The positive declarations of the president were to the effect that the sale under the mortgage was at the instance of the company, that the purchase was for the company, and that the business thereafter conducted was for the company, although ostensibly in the name of D. C. Mastin. The acts of the officers and of the plaintiff himself, all tend in the same direction. D. C. Mastin was never seen at the mines after the sale, and the business thereafter was conducted under the control of J. J. Mastin, who was a director and former president of the company. Whether the sale was a cover to the secret and continued ownership of the company, as to the mines and their products, is a question for

the jury to determine. The trial of an issue of this nature necessarily takes a wide range, and it will not do for the courts to declare that any particular instrument or paper constitutes, either in law or equity, an impregnable barricade behind which a fraudulent grantor may rest in security. The ruling of the court in this case presented an unfair result. The plaintiff, by documentary and oral evidence, was permitted to prove that the mines and the products thereof were in the possession and ownership of D. C. Mastin, while the defendants were prevented from disproving such facts, because they had not filed a bill in equity to set aside the sale as fraudulent; although, in their answer, they alleged it to be fraudulent, as against creditors, and as constituting a cover and concealment of the actual and continued ownership of the company. If such was its character, it was void at law, as well as in equity, and the court erred in preventing the defendants from establishing its fraudulent character and use, if able to do so.

The judgment is reversed and the cause remanded. All concur.