JAMES STEVENS, Respondent, v. DENNIS SPRINGER ET AL., Appellants.

Kansas City Court of Appeals, November 22, 1886.

1, CLAIM OF PROPERTY UNDER SECTIONS 2366 AND 2367, REVISED STATUTES—EFFECT OF THE PROCEEDINGS UNDER.—The proceeding provided by the statute (sects. 2366, 2367, Rev. Stat.) for the trial of the rights of property (in the case of personal property seized under execution), by any other than the debtor in the execution, is a judicial proceeding, and a judgment thereon is as conclusive as a judgment in any other judicial proceeding. It is a formal trial in court of the rights of property.

2. —— MAKING OF CLAIM NOT THE EXCLUSIVE REMEDY—REMEDY AGAINST SHERIFF.—A claim made under the provisions of this statute does not deprive the claimant of his remedy against the sheriff on his official bond. The statute does not purport to make this remedy exclusive of all other remedies, and resort to it is not obligatory on the claimant.

3. DAMAGES—MEASURE OF—HOW PROOF OF MADE.—The proof of value is generally by the judgment or opinion of witnesses. If the article has a market value, that will usually control as the best evidence of its value. If this test has been applied to it by the sale of it the fact may be proved as evidence of its value. Even the amount the goods cost is admissible, and so the amount sold for at auction has been admitted. But proof of the value of goods when worn can scarcely be ascertained, except by reference to the former price and the extent of depreciation. 2· Sutherland on Damages, 375–376. But the purpose for which the goods are to be used, cannot, in any way, affect the real value of the property. The true test is the value of the property as chattels.

APPEAL from Barton Circuit Court, HON. CHARLES G. BURTON, Judge.

*Reversed and remanded.*

Statement of case by the court.

This was an action for the conversion of the following personal property :

"One fifteen-ball Brunswick pool table and sixteen pool balls, one Brunswick billiard table and twenty-two cues, and four billiard balls, one ice chest, one bar and counter, glassware, fixtures and bottles, and two chandeliers, one hanging lamp, four bracket lamps, one mirror, seven pictures, nine chairs, two bar or movable lamps and one clock."

The defendant, Springer, seized the property as that of one Norris under an execution from the Barton circuit court in favor of the defendant, Griswold, against Norris and another. The plaintiff claimed the property as his own absolutely in the manner provided by section 2366, Revised Statutes. Griswold gave to the sheriff, Springer, an indemnifying bond, which for the purposes of this case may be said to have been such as required by the statute. The plaintiff as claimant did not make the bond provided by the statute.

The sheriff proceeded to sell the property under the execution as the property of Norris. The sheriff returned the claim and the bond aforesaid to the circuit court, and Griswold, having filed a denial of the claim, the question whether the plaintiff owned the property was, in that court, tried in the manner provided by section 2367, Revised Statutes. The property was found to belong to the plaintiff; judgment was accordingly rendered as provided by the statute and the sheriff was by the judgment directed to release the property to the plaintiff, which the sheriff could not do on account of having already sold and disposed of it.

Upon the question of the value of the property the plaintiff introduced the following evidence:

The plaintiff testified: "All the property I owned in Norris' saloon was worth about one thousand dollars."

*Cross-examination:* "I got the fifteen-ball pool table from Collin Cockrell, in Cherokee, Kansas; it was second hand at that time; it had been used in a saloon before I got it; do not know how long. Bought a great many articles from Collin Cockrell, a billiard table,

some billiard balls and cues, and some other things, but cannot tell what; they were all second hand goods. After I got these things, I bought new pool balls and new cloths and covers for both the pool table and billiard table; also some small numbered pool balls, and some new billiard balls and new pin pool balls. Think I contracted to pay Cockrell four hundred and fifty dollars for the things I got of him. He talked some of going into partnership with me at that time, and the understanding was that if he did not do so, I was to pay him four hundred and fifty dollars. I bought two billiard tables and some glass ware of Mr. House, at Fort Scott, Kansas, and traded these two tables to Cockrell for the things I got of him. The counter, pictures and glass ware I got of House I put into the saloon. Paid House in the neighborhood of six hundred dollars for the things I got of him, but do not remember the exact amount; they were also second hand goods, had been used in the saloon business; don't know how long. The two tables I got of House were worth about one hundred dollars each. * * * A new table like the one levied upon by Springer would be worth, now, about two hundred and seventy-five dollars; and a new pool table would be worth about three hundred and twenty-five dollars."

, On behalf of plaintiff, Wandall Crawford, testified as follows:

"I lived in Lamar, March, 1882. I was at Norris' saloon and saw the goods levied upon by Dennis Springer. The property, just as it stood in the building, would have been worth about one thousand dollars. It was sold at place where it stood."

*Cross-examination:* "I bought the billiard table at the sheriff's sale for sixty-six dollars; the pool table for fifty dollars; the counter for fifteen dollars; lamps for $2.50. William Wells bought most of the glassware. The goods had all been used some. They were second-hand goods. The billiard table, new, would have been

worth two hundred and seventy-five dollars ; and the pool table, new, would have been worth three hundred and twenty-five. Refitted, they would be worth twenty-five dollars to fifty dollars less than new ones."

Frank Parker, on behalf of plaintiff, testified : "I am acquainted with the goods taken by Dennis Springer from William A. Norris. He took every thing in the saloon except the stove. Have been acquainted with the value of that kind of goods, more or less, for the last four years. Making a rough guess at it, I think these goods ought to be worth one thousand dollars to one thousand and two hundred dollars."

John Jackson, on behalf of plaintiff, testified : "Had some knowledge of the value of saloon property and fixtures, and with the things in Norris' saloon. Could not state what they would be reasonably worth."

William Wells, on behalf of plaintiff, testified : "Have had some acquaintance with the value of saloon fixtures, billiard tables, etc. I saw the articles that were sold by sheriff Springer, in the Norris saloon, on an execution against Norris. I never bought any second hand goods of this kind. It would take one thousand dollars or one thousand and one hundred dollars to fit up a saloon new, with new goods, such as those in Norris' saloon ; but do not know what it would cost to fit it up with second hand goods like these. Tables were fitted up nearly as good as new. Counter was in good preservation, but it did not sell at the sale for what it was worth. It brought thirteen or fifteen dollars at the sale, and I afterward bought it from Mr. Crawford for fifty dollars ; it was worth about two hundred dollars ; probably cost three hundred dollars new ; it was a fine one."

*Cross-examination :* "Do not know how long Collin Cockrell used these things over in Kansas ; nor how long Norris used them. Second hand goods generally sell for less than new ones. They would depreciate from

one-half to two-thirds in value by being second hand goods."

The court rejected evidence offered by the defendants of the amount for which the sheriff sold the goods.

BULER & TIMMONDS, for the appellants.

I. Under the present statutes, when personal property is seized under execution, and is claimed by any other than the execution creditor and written claim is made, and the execution creditor gives bond, recourse must be had *on that bond*, and not by suit in trespass against the sheriff. Sect. 2366, Rev. Stat. ; Laws Mo. (1877) p. 251; *State v. Platt*, 52 Mo. 466; *Bradley v. Holloway*, 28 Mo. 150; *State v. Lutzinger*, 41 Mo. 498; *Dodd v. Thomas*, 69 Mo. 364; *Steel v. Farber*, 37 Mo. 71.

II. The question of ownership was not *res adjudicata* in this case against defendant, Springer. *Henry v. Wood*, 77 Mo. 277; 1 Greenl. Evid., sects. 189, 535.

III. Evidence as to the amount the goods actually brought at sheriff's sale is admissible ; and the court committed error in rejecting such testimony, and also in giving its second instruction on that point. *State v. Jacob*, 2 Mo. App. 183; *Truitt v. Baird*, 12 Kansas, 420; *Paine v. Boston*, 4 Allen (Mass.) 168; *Harrison v. Glover*, 72 N. Y. 451; 2 Greenl. Evid., sect. 640.

IV. The instructions given for plaintiff were erroneous. Those asked by defendant should have been given.

THURMAN & WRAY, for the respondent.

I. All statutory remedies are cumulative unless in terms, they repeal the existing common law remedies, and statutes in derogation of the common law are to be construed strictly. *Railroad v. Hecht*, 5 Otto (U. S.) 168; *Malcom v. Rogers*, 5 Cowen (N. Y.) 188; 24 Ill. 105; 89 Ill. 571; 35 Am. Rep. 182; 125 Mass. 190; *State v. Clinton*, 57 Mo. 390; *Schell v. Leland*, 45 Mo. 289.

. II.   Section 2366, Revised Statutes, provides a summary remedy for the trial of the rights of property between the claimant, the sheriff and the execution creditor, and does not repeal the common law remedies of trespass, trover or replevin.   *Belkin v. Hill*, 53 Mo. 492 ; *State ex rel. Martin v. McBride*, 81 Mo. 349 ; *Roberts v. Heirn*, 27 Ala. 676 ; *Elliott v. Heyden*, 104 Mass. 180 ; *Knight v. Nelson*, 117 Mass. 459.

III.   The measure of damage in trespass where the taking is by an officer and without malice, as in this case, is the market value of the property at the time and place of taking with legal interest thereon from the time of the taking.   Sedgwick on Meas. Damages, 530 ; *State ex rel. v. Smith*, 31 Mo. 566 ; *Gilson v. Wood*, 20 Ill. 37 ; *Brown v. Allen*, 35 Iowa, 306 ; *Dalton v. Louderdale*, 27 Mich. 529.   The price realized at a forced sale by a wrong-doer can never be sanctioned as a proper criterion for ascertaining the actual value of goods.   *Campbell v. Woodworth*, 26 Barb. (N. Y.) 648 ; *Morton v. Scull*, 23 Ark. 289 ; *Haner v. Hathaway*, 33 Cal. 117 ; *McLean v. Birdsong*, 24 Georgia, 265 ; *Ellis v. Wise*, 33 Ind. 127 ; *Spencer v. Vance*, 57 Mo. 428 ; *Seibel v. Siemon*, 72 Mo. 531.

IV.   A trial under the statute, is *res adjudicata* as to the ownership of the property between the execution creditor and sheriff, on the one hand, and the claimant on the other.   Wells on *Res Adjudicata*, sects. 16–67 ; *Wood v. Easel*, 63 Mo. 193 ; *Harvie v. Turner*, 46 Mo. 444 ; *Roberts v. Heirn*, 27 Ala. 676 ; *Emery v. Fowler*, 39 Maine, 331.

V.   The bond taken by the sheriff in this case, containing no condition to indemnify the claimant, as required by section 2366, Revised Statutes, would be no bar to a suit in trespass under the acts of 1855.   *Dairy Co. v. Sauer*, 16 Mo. App. 1.

HALL, J.—The court held that the plaintiff was not precluded from bringing this action because he made

claim to the property and his claim was tried and disposed of in the manner provided by the statute ; that the plaintiff was not for said reasons confined to his remedy on the idemnifying bond given by the execution creditor.

The court also held that the judgment of the circuit court upon the question of the plaintiff's ownership of the property was, as to such question, *res adjudicata* upon both the defendants in this suit.

The court held that evidence of what the property sold for at the sheriff's sale was not competent upon the question of the value of the property. As to the measure of damages the court gave the following instruction :

" 2.   The court instructs the jury that in determining the value of the property described in plaintiff's petition, they will assess the same at such sum as they shall believe from the evidence it was reasonably worth, taking into consideration the purpose for which the same was intended to be used, in the building where the same was at the time of the seizure by defendants, and not what plaintiff paid for it, nor what it was sold for by defendant, Springer."

The defendant complains of the action of the court in each of the particulars named.

By section 2366, Revised Statutes, it is provided that, when any other than the debtor in the execution shall, in writing, verified by affidavit claim personal property seized under execution, the officer making the seizure shall at once deliver a copy of the claim to the execution creditor or his attorney of record ; and that, unless the execution creditor, within a reasonable time thereafter, execute and deliver to said officer an indemnifying bond, such as provided in the statute, the officer shall abandon such levy and release the property to the claimant.   Provision is also made for the claimant retaining possession of the property by giving bond.   It is further provided by said section as follows : "Such bond may be sued on at the instance of any person in-

jured, in the name of the state to the use of such person, for any breach of the condition of such bonds ; and the damage which such person shall sustain shall be recovered thereon, if the execution creditor shall give bond as above provided.''

By section 2367, Revised Statutes, it is provided that, ''The officer shall return the claim and such bond or bonds as shall have been taken by him to the court to which the execution may be returnable, on or before the first day of the next term thereof, and the clerk shall enter the matter upon the docket, as near as it may be as civil cases are docketed, and the matter shall, unless continued for cause, be tried at the term at which the claim is returned. The execution creditor shall answer or demur to the claim returned by the officer, on or before the first day of the term, and the claimant may reply to the answer within such time as may be directed by the court, and all proceedings in relation to such claim shall be governed, as far as practicable, by the law relating to pleadings and practice in civil actions. If the execution creditor shall fail to answer or demur, as herein provided, or the judgment shall be in favor of the claimant, the court shall, by its order, direct the officer to release such property to the claimant, and shall enter judgment for costs against the execution creditor and his sureties.   *   *   *''

The proceeding thus provided by the statute for the trial of the rights of property is a judicial proceeding, and a judgment therein is as conclusive as a judgment in any other judicial proceeding.

As said in the *State ex rel. v. McBride* (81 Mo. 354), ''The act provides for the pleadings in respect to the claim by answer, demurrer and reply. It, also, directs the nature and form of the judgments to be rendered.   *   *   * It evidently contemplates a special suit, or proceeding upon the claim returned into court, which is made to take the place of a petition, to be answered or demurred to like any other statement of a cause of action.''

And as said in *Houx v. Shaw* (18 Mo. App. 49), the trial is "a formal trial in court of the rights of property."

In *State ex rel. v. McBride*, it was held that a claim made by one, under the provisions of the statute of 1879, did not deprive him of his remedy against the sheriff on his official bond. In discussing the matter Martin, C., who delivered the opinion of the court said : " Indeed, the statute does not purport to make this summary remedy exclusive of all other remedies, for in section 2366, it is provided that ' such bonds may be sued on at the instance of any person injured in the name of the state to the use of such person for any breach of the condition of such bonds.' While it thus appears that the summary, or supplemental proceeding on execution does not exclude an independent action on the bond, the right of action so permitted on the bond does not purport to be exclusive of other forms of action, and resort to it is not obligatory on the claimant. The section provides only that ' *such bonds may be sued on.*' "

It will be noticed that the concluding words of section 2366, touching suits upon the bonds provided for therein, "*and the damage which such person shall sustain shall be recovered thereon,* if the execution creditor shall give bond as above provided," are not mentioned by Martin, C., in his opinion. Those words would seem to be so express and exclusive in their nature as to limit the remedy of the claimant to a suit upon the bond, given by the execution creditor, for the damages sustained by the levy and seizure. But the supreme court, in the case mentioned, has plainly held otherwise, and we, therefore, are bound to so hold. We cannot assume that the supreme court overlooked the concluding words of section 2366.

The statutory proceeding, had for the trial of the rights of property, was a judicial proceeding, but it did not, of course, bind any one but the parties thereto and their privies.

The claimant and the execution creditor were, of course, parties. And if it be true that the statutory remedy which the claimant had elected to pursue did not exclude him from maintaining afterwards an action for trespass against the sheriff, we cannot perceive why the sheriff was not also a party to the said proceeding. Under such construction of our statute, the issue made in the said proceeding was made to protect the sheriff in his levy on the goods claimed by the claimant, and the question for trial was the ownership by the claimant of the goods *and the sheriff's right to levy thereon.* In other words, the sheriff's right to seize and hold the goods was on trial in a legal proceeding for that purpose, and he was a party to the proceeding, for he must be considered a party to a proceeding in which his rights were legally litigated and determined.

The sheriff may not have been, strictly speaking, a party to the record, but he was a real party in interest and that suffices. *State to use v. Coste,* 36 Mo. 438.

The claimant would have been bound by a judgment against him not only as to the execution creditor, but also as to the sheriff, and the sheriff was bound by the judgment in the claimant's favor. Had the sheriff retained possession of the goods until the rendition of the judgment, he would have been bound by the judgment and would have been obliged to release the goods to the claimant. The sheriff was not liable simply because he sold the goods under the execution prior to the judgment aforesaid, but he was not in any better position by reason thereof. He was, notwithstanding the sale of the goods, bound by the said judgment. The judgment was by the statute intended to settle the rights of the claimant, the sheriff and the execution creditor, involved in the seizure of the goods under the execution, so far as they depended upon the claimant's ownership of the goods, and the judgment, in so far as concerns the claimant's ownership of the goods, was *res adjudicata* upon the claimant, the sheriff and the execution creditor.

In this case there were no aggravating circumstances. The measure of damages was the value of the property at the time it was seized by the sheriff, with legal interest thereon up to the trial. *Walker v. Borland*, 21 Mo. 292 ; *State to use v. Smith*, 31 Mo. 572 ; *Spencer v. Vance*, 57 Mo. 430 ; *Seibel v. Siemon*, 72 Mo. 531.

Not only is it conceded by counsel for plaintiff that the measure of damages is as thus stated, but it is contended by them that this is so. The contention is made to support the action of the court refusing to permit the defendants to prove what the sheriff sold the goods for. "The proof of value is generally by the judgment or opinion of witnesses. If the article in question has a market value, that will usually control as the best evidence of its value. If this test has been applied to it by actual sale of it, the fact may be proved as evidence of its value. It is not conclusive, but tends to show its value, and in the absence of other evidence would suffice. Even the amount the goods cost is admissible for the same purpose. * * * So the amount sold for at auction has been admitted." 2 Sutherland on Damages, 375-6.

Had the market value of the goods at the time of the conversion been susceptible of such definite proof as the market value of staple articles of merchandise is, evidence of the market value of the goods at any other time, either prior or subsequent to the conversion, would not have been competent. But the market value of the goods was not susceptible of such proof. Proof of the value of such goods, "when worn, can scarcely be ascertained except by reference to the former price and the extent of depreciation." *Luse v. Jones*, 39 N. J. Law, 709.

The price of new goods of the kind in question was competent as a basis for comparison. Most of the goods had been purchased by the plaintiff as second-hand goods in the first place. The price paid by him was not

·conclusive, either for or against him, but it was competent as one item of evidence tending to show the value of the goods at the time of the purchase as a basis for comparison, according as the goods had improved or deteriorated in value. And the price for which the sheriff ·sold the goods was admissiblè as some evidence ·of the value of the goods when seized; it was not conclusive, but it was one circumstance going :to show the said value of the· goods. Both the price paid by the plaintiff and the price obtained by the sheriff were for the jury's consideration and entitled to such weight as they might have seen proper to give to those facts under all the circumstances in evidence. 1 Sutherland on Damages, 796–799, and cases cited.

The court erred in refusing to permit the defendant to prove what the sheriff sold the goods for, and we think that the court more seriously erred, especially under the evidence in this case, in telling the jury that they might, in determining the value of the property, take into consideration "the purpose for which the same was intended to be used in the building where the same was, at the time of the seizure by defendants." Such purpose did not in any way affect the real value of the property. For the purpose mentioned the property might have been as valuable as new property of the same kind, but yet the measure of damages would not on that account have been the value of such new property. The true test, the correct measure of damages, as we have said, was the value of the property at the time of the seizure, and by value we mean the value of the property as chattels, and not as fixtures in the building used for the purposes of a saloon. The question was, not what was the value of the property as such fixtures, but what was the value of the property as chattels, in the market. Had the instruction alluded to not contained the objectionable words, it would have read as follows:

"The court instructs the jury that in determining the value of the property described in plaintiff's petition, they will assess the same at such sum as they shall believe, from the evidence, it was reasonably worth, and not (at) what plaintiff paid for it, nor what it was sold for by defendant, Springer."

And if the court had given the instruction in that form, and had also given in connection with it the seventh instruction asked by the defendants and rejected by the court, the court would have declared the law as we think it should have been declared. The instruction referred to was as follows:

"7. The court instructs the jury that in arriving at the reasonable value of the goods in question, they may take into consideration the price which the goods brought, both at private and public sale, as well as all the facts and circumstances given in evidence."

Judgment reversed and cause remanded. Ellison, J., concurs; Philips, P. J., not sitting.