Marston, J.:
John Sturgis, Jr., upon the 16th day of September, 1872, conveyed to William Hill certain lands upon which there was then growing a crop of wheat which had been sowed about two weeks previous to the sale. Upon the 6th day of December, 1872, a judgment was rendered in the St. Joseph circuit court in favor of the Corn Exchange National Bank and against the said John Sturgis, Jr;; an execution was issued thereon the same day and delivered to said Pierce as sheriff of said county, who by virtue thereof levied upon the wheat then growing upon said lands. In July, 1873, after the wheat had been harvested, the sheriff took actual possession of it. Upon the 8th day of August following, Hill brought an action of replevin against Pierce to recover the wheat so seized and held.
Upon the trial the defendant Pierce, after proving the debt, judgment and *other necessary preliminaries, offered to show by parol evidence that the deed executed by John Sturgis, Jr., to William Hill was fraudulent as against creditors. To this offer plaintiff’s counsel objected on the ground that the evidence proposed was irrelevant and immaterial, as the proceeding was not one to try the title to the land, and if it were, defendant was not in a position to raise the question; that until the deed had been set aside by proceedings instituted by the bank against Hill, the crops growing on the land at the time of the conveyance could not be levied upon on the theory that the conveyance was fraudulent. The court sustained the objection, and defendant’s counsel excepted.
It was conceded by counsel for both parties upon the argu *189 ment in this court, that grain, while growing, or any unharvested crops, are subject to levy by virtue of an execution, and that the execution continues and remains in life and may be completed at any time within thirty days after such grain or other unharvested crops shall be ripe or fit to be harvested.— § 6100, % Comp. L. So that no question is raised as to the regularity of the proceedings. It was also conceded that a conveyance fraudulent as to creditors is good as between the parties, and where the conveyance is of real estate, crops then growing pass with the land to the grantee, and that in a proceeding by a judgment creditor to set aside the conveyance, the other creditors cannot have the benefit of such proceedings, but that the sale will only be opened or set aside far enough to enable the creditor in that case to collect his claim. As to the parties themselves and any other creditors of the grantor the conveyance remains good, subject, however, to be again attacked by the other creditors should they deem it proper to do so.
It was insisted on the part of Hill that the conveyance was conclusive evidence of his title to the land and crops growing thereon until set aside, either by a levy and sale of the land and an action of ejectment afterwards brought to test the title thus acquired, or by a bill in chancery in aid of an execution levied upon the lands. We have thus fully stated the position of counsel in order to present as clearly as possible the only question in issue, which may be stated in the language of the brief for plaintiff in error, as follows: “Was it competent for the sheriff to assert the fraudulent nature of the deed from Sturgis to Hill, as against creditors, by levying on the crops growing on the land at the time of the conveyance, without first having the conveyance set aside in some direct proceeding for that purpose ?”
The wheat, immediately previous to the conveyance, was in existence, and was then subject to levy and sale upon executi< n in favor of Sturgis’ creditors, and had Sturgis at this time fraudulently sold the wheat with the intent to hinder, delay or defraud his creditors, the sale as to them would have been void. Tn such case it would make no difference whether the sale was *190 a verbal or a -written one, under seal or without seal, Sturgis could not, by the form in which he made the sale, make it valid or deprive his creditors of having it declared as to them fraudulent and void. The law in dealing with such sales does not, out of respect to the instrument by which the fraudulent conveyance was made, hesitate to declare such a sale void. To do so would be but pointing out a way for the fraudulent debtor to effectually place his property beyond the reach of his creditors. The intention of the parties in making the sale and its effect upon the creditors of the vendor is what guides and governs the court and determines the question, and the parties in making or attempting to carry out their fraudulent purposes ■cannot deprive the creditor of any rights which he would have had if no such sale had been made. The creditor had in this case an undoubted legal right to levy upon the wheat in question before the conveyance of September 16th. It is true that he at the same time might have levied upon the land, but his right so to do did not deprive him of the right to subject the wheat to the payment of his claim. His right to levy upon the land did not deprive him of any other right or remedy which the law gave him. A levy upon and sale of the land might *or might not be sufficient to satisfy the execution, but whether it would or not, the debtor could not, by a fraudulent sale of the land, prevent his creditor from levying upon the crops as though no such sale had been made. The debtor could not in this indirect manner jdace the crops beyond the reach of his creditor, where he could not directly. He, could not by his fraudulent act impose upon the crop the quality of real estate exclusively, and thereby prevent his creditors from reaching it other than as real estate. He could not give it that character. He could not by such a sale compel the creditor to adopt the more tedious and expensive method of levying upon and selling the land, and then bringing an action of ejectment to test the validity of the conveyance, or of filing a bill before sale in aid of his execution. To give the conveyance this effect would certainly be .to hinder and delay the creditor in the collection of his claim, and if the claim was less than one hundred dollars, to defeat him perhaps entirely.
*191 It is no answer to this to say that in this manner the conveyance of the land is attacked collaterally, and that the result is indirectly to declare the deed void and yet permit it to stand good as between the parties as a conveyance of the land. The parties to such a fraudulent conveyance have no right to say that the conveyance cannot thus be collaterally attacked, and although as to the land the conveyance would be unaffected, yet this is no more than was conceded would be. the result, in any form of proceeding, as to all over what would be required to satisfy the claim of the attacking creditor.
Neither is it an answer to say that the title to the land not being in issue nor affected by the proceedings, and thus permitted to stand good as between the parties, the crops, which were but the incident thereto, are also unaffected; that a creditor cannot permit the deed to stand as valid, and seize the crops conveyed by the same instrument, as an incident thereto, as invalid. -This is but begging the question. Everything which passes under the deed, while valid *as between the parties thereto, is absolutely void as to the creditors of the grantor. They have a right to treat the whole or any part as void; as to them it is of no validity; they-are not bound by it, nor are any of their rights affected thereby. They might levy upon a part of the lands conveyed, and as to them have the deed declared fraudulent and void, yet as to the rest, the deed would stand and would be unaffected by such a proceeding, and so with reference to the crops.
There is, we think, a clear distinction between this case and Jones v. Bryant, 13 N. H., 63, and Garbutt v. Smith, 40 Barb., 22, cited upon the argument. In those cases the property levied upon was not in existence at the time of the fraudulent conveyance. It had at no time been the personal property of the grantor. • It could not, therefore, have been subject to levy at the time of the conveyance. True, it grew, or was mined upon, the lands fraudulently conveyed, but no act of the grantors, other than the conveyance, contributed in any way or part to its production. It might well be said in those cases that the creditor could not stand by and permit the fraudulent grantee to retain the lands, and yet claim the proceeds thereof, pro *192 duced wholly by the labor or at the expense of the grantee. We are of opinion that the court erred, in not admitting the evidence offered, and that the judgment must be reversed, with costs, and a new trial ordered.
The other justices concurred.