JOHN WILLIAMS v. STEPHEN H. CLINK.

*Fraudulent conveyances—Estoppel—Evidence.*

1. It is error to permit a party to prejudice the jury by improper and immaterial statements volunteered on his cross-examination.

2. Where the attention of a defendant is called on cross-examination to a chattel mortgage given by him to the plaintiff, the existence of which tends to support plaintiff's claim upon the trial, plaintiff cannot, by not offering the mortgage in evidence, deprive the defendant of the right to explain its execution; but if such explanation is made, it is error to reject the mortgage when afterwards offered in evidence by the plaintiff.

3. A mortgagor may dispute the validity of the mortgage by showing that it was given without consideration, and for the purpose of defrauding his creditors, in a suit brought by the mortgagee to enforce the mortgage; citing *Judge v. Vogel*, 38 Mich. 569.

4. The rule in relation to a conveyance given to defraud creditors, and without consideration as between the parties, is that the law will not aid either of the parties committing or attempting to commit the fraud, but will leave them where they have

placed themselves, without relief. If the contract is executory, it will not be enforced; and if executed, it will not be relieved against. If it has been performed in part, the law gives it effect in so far as executed, and holds it void in so far as it remains unexcuted. *Quirk v. Thomas*, 6 Mich. 77.

Error to Muskegon. (Dickerman, J.) Argued January 12, 1892. Decided February 12, 1892.

Replevin. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*F. W. Cook*, for appellant.

*Stephen H. Clink*, in *pro. per.*

MORSE, C. J. The plaintiff brought replevin in the Muskegon circuit court for certain law-books and office furniture, under a chattel mortgage which he claimed to hold against the property. The defendant claimed that the mortgage was given without consideration. The jury found for the defendant, who waived a return of the property, and had judgment for its value in the sum of $899.91.

The mortgage was executed September 2, 1886, for the sum of $1,000, and had been duly renewed each year. It was claimed by the plaintiff that the property was mortgaged in 1884 to the administrators of one Allen for the greater part of the purchase price. Defendant had no money to meet the first payment upon said mortgage, and on the 24th of March, 1884, applied to plaintiff for a loan of money for that purpose. At the time, he was owing plaintiff $65, and plaintiff gave him a check for $435, making $500 in all. When the second payment came due, and on September 2, 1886, the plaintiff gave defendant a check for $750, making the total indebtedness of defendant to plaintiff $1,250. The next day defendant telephoned plaintiff that he had executed the

mortgage and filed it. Afterwards plaintiff found that the mortgage was for only $1,000. He spoke to defendant about it, who said he expected some money, and would pay the $250 in cash.

The defendant claimed that the check for $435 was paid to him for legal services rendered for plaintiff, and that, although he used the check for $750 on September 2, 1886, he returned the money to plaintiff on the next day from the proceeds of a note made by defendant and indorsed by plaintiff; and that he gave this mortgage, not to pay or secure any debt to plaintiff, but to prevent an execution from being levied upon the property.

Complaint is made that the defendant was permitted to prejudice the jury against the plaintiff by improper and immaterial statements. The complaint is justly made. While the defendant was testifying to the legal services that he performed for plaintiff, in payment of which he claimed the $435 check was given, his counsel asked him the following question:

"Don't you remember that Timothy Bresnahan, the sheriff, levied upon a lot of his [plaintiff's] liquor down there?"

Defendant answered:

"There was a lot of them. That was a case where Mr. Williams instructed me,—to use his own language, —where he wanted me to give Dunn hell. That was the expression that he used. And he said: 'Any time you can make Dunn pay five dollars by paying ten, the money is ready. I am willing to spend ten dollars any time I can make Dunn spend five.' That is the instructions he gave me in that case."

Plaintiff's counsel moved to strike out all of the answer after the words, "There was a lot of them," but the court denied the motion. This was error, and there is no excuse for the defendant, who is a lawyer, that can palliate the error. The judgment ought to be reversed

for this cause alone. The record, however, is full of remarks and insinuations by the defendant, both off and on the witness stand, as to matters entirely irrelevant to the issue, and which manifestly could have but one purpose and effect, and that to prejudice the jury against the plaintiff.

The attention of the defendant on his cross-examination was called to the execution by him of a chattel mortgage for $500 to plaintiff on the day that he received the check of $435, to wit, March 24, 1884. He had no recollection of any such mortgage. He was shown the mortgage, and then admitted that he made it. The mortgage was on his interest in a shingle-mill, and it was claimed by plaintiff that defendant offered it to him as security for the $500 which defendant then owed him, but plaintiff would not take it, as he did not consider it good security, but defendant went away and left it on plaintiff's desk. Defendant claimed that he had forgotten all about the mortgage, and wanted to consult with his attorney. After doing so he returned to the witness stand, and gave an explanation of the mortgage, claiming it was offered to plaintiff in another and altogether different matter. Plaintiff objected to defendant's explanation about the mortgage, as it had not yet been offered in evidence. There was no error in this. Plaintiff could not use a paper in this way, and then deprive defendant of his right to explain in reference to it, by not offering it in evidence. But the court erred in not receiving the mortgage in evidence, it being offered after defendant had made his explanation.

It is also alleged as error that the court instructed the jury that although they found that defendant gave the $1,000 mortgage to plaintiff, not as security for a debt, but for the purpose of hindering and delaying his creditors, he was not estopped by such fraudulent intent and

conduct to dispute the validity of the mortgage in this suit. There was no error in this instruction. The precise question involved in this case was ruled in *Judge v. Vogel,* 38 Mich. 569. In that case the defendant insisted that the mortgage was executed and intended as a fraud upon creditors of the mortgagor, and to cover property for his benefit. COOLEY, J., in rendering the opinion for the full Court, said:

"The question, therefore, seems to be this: Whether one who gives a mortgage without consideration, in order to defraud creditors, is estopped from disputing a full consideration when the mortgage has passed into the hands of a purchaser.

"A mortgage fraudulent as against creditors may be avoided at their option; but how the intended fraud upon them can give it validity as to others is not explained in the briefs. The right of the creditors is to defeat it; but there seems to be no necessary relation between a right of one man to defeat it as a fraud upon him, and a right of another to affirm it because of the same fraud. The fraud which should give one rights must be a fraud which in some way concerns his own interest.  *  *  * There was consequently no error in the court refusing the instruction prayed."

The case of *Bassett v. Shepardson,* 52 Mich. 3, is clearly distinguishable from the case of *Judge v. Vogel.* In the case of *Bassett v. Shepardson* the attempt was made to impeach an executed agreement by showing that it was made with intent to defraud the grantor's creditors.

The rule in relation to a conveyance to defraud creditors, and without consideration as between the parties, is that the law will not aid either of the persons committing or attempting the fraud, but leave them where they have put themselves, without relief. If the contract is executory, it will not be enforced; and if executed it will not be relieved against. If it has been performed in part, the law gives it effect in so far as executed, and

holds it void in so far as it remains unexecuted. See *Quirk v. Thomas*, 6 Mich. 77 (per MANNING, J).

The plaintiff in this case is undertaking to enforce, if defendant's evidence be true, a mortgage executed solely to defraud defendant's creditors; and, although the law does not look kindly upon the pleading of one's own fraud as a defense, it seems to be permitted, upon grounds of public policy, when the contract sought to be enforced is illegal, and the plaintiff is a participant in the fraud.

The judgment is reversed, and a new trial granted, with costs of this Court to plaintiff.

McGRATH, LONG, and MONTGOMERY, JJ., concurred. GRANT, J., did not sit.