BROWNELL REALTY, INC v KELLY

Docket No. 46810. Submitted June 11, 1980, at Grand Rapids.—Decided February 17, 1981. Leave to appeal applied for.

On March 14, 1958, Oris Moore, title holder to certain real property, and his wife, Mildred L. Moore, executed a warranty deed to Mabel Kobs. Simultaneously, Mabel Kobs executed a warranty deed conveying the property to Mildred L. Moore. Both deeds were recorded on March 15, 1958. On September 29, 1959, a judgment was entered on behalf of the Oscoda State Savings Bank against Mr. Moore. The judgment was amended to authorize execution and a levy and execution was filed and recorded on November 14, 1960. On December 6, 1965, the Emmet Circuit Court found the conveyance from Oris Moore to Mabel Kobs to Mildred Moore left Oris insolvent and was done with intent to defraud creditors and adjudged that the deeds conveying title to Mildred Moore were "set aside and vacated and declared to be null and void and of no effect whatsoever as against the * * * Oscoda State Savings Bank". The ruling authorized the bank to proceed upon its writ of execution by allowing the sheriff to levy upon and sell the property unless the debt was paid. The judgment was not recorded until November 1, 1976. In July, 1966, the Oscoda State Savings Bank assigned its rights in the claim to Carl Brownell for valuable consideration.

Brownell recorded his assignment on November 2, 1976. In lieu of an execution sale of the property, Brownell sought to obtain a deed from Oris and Mildred Moore. In February, 1969, Oris Moore tendered a quitclaim deed to Brownell in exchange for a discharge of the debt and $1000 in cash. Mildred Moore refused to sign the deed. The deed was recorded in March of 1969. Brownell took possession, rented the property, paid the taxes and made improvements. In 1973, Brownell deeded the property to Brownell Realty, Inc. Brownell was finally ousted

REFERENCES FOR POINTS IN HEADNOTES

[1] 23 Am Jur 2d, Deeds §§ 291, 292.
[2] 37 Am Jur 2d, Fraudulent Conveyances § 181.
[3] 30 Am Jur 2d, Executions §§ 245, 333.
[4] 77 Am Jur 2d, Vendor and Purchaser §§ 375, 376.

from the property by L. B. Kelly, who had obtained a warranty deed from Mildred Moore for $100 in April, 1976. The deed was recorded in July, 1976.

Carl A. Brownell and Brownell Realty, Inc., brought an action against L. B. Kelly, his wife and others to quiet title. During the pendency of the suit, L. B. Kelly deeded the property to Frederick and Debra Barrett, who gave a mortgage to Northwestern Savings and Loan Company. The Barretts and Northwestern were added as defendants. The Emmet Circuit Court, Nicholas J. Lambros, J., held that Brownell never acquired title to the property and granted a directed verdict for defendants. Plaintiffs appeal. *Held:*

1. The grantee in a quitclaim deed acquires the right and title which his grantor had and no other. A judgment under the Uniform Fraudulent Conveyance Act setting aside a conveyance of real property does not nullify the conveyance as between the vendor and vendee; it merely impresses the property with an equitable lien in the amount due the defrauded creditor. The statute providing that no levy by execution on real property is valid unless the property is sold within 5 years bars the enforcement of an equitable lien by an assignee where, prior to assignment, the assignor levied on the property and where the assignee failed to proceed to execution sale within 5 years of the assignment.

2. The assignee of an equitable interest in real property does not have standing to challenge the conveyance of legal title to the property where his equitable interest therein is protected. Therefore, plaintiffs do not have standing to challenge the conveyance from Mildred Moore to Kelly on the grounds of lack of consideration.

Affirmed.

1. DEEDS — QUITCLAIM DEED — TITLE.

The grantee in a quitclaim deed acquires the right and title which his grantor had and no other.

2. FRAUDULENT CONVEYANCES — EQUITABLE LIENS — STATUTES.

A judgment under the Uniform Fraudulent Conveyance Act setting aside a conveyance of real property does not nullify the conveyance as between the vendor and vendee; it merely impresses the property with an equitable lien in the amount due the defrauded creditor (MCL 566.11 *et seq.;* MSA 26.881 *et seq.).*

3. LIMITATION OF ACTIONS — EXECUTIONS — ASSIGNMENTS — REAL PROPERTY — STATUTES.

The statute providing that no levy by execution on real property

is valid unless the property is sold within 5 years bars the enforcement of an equitable lien by an assignee where, prior to assignment, the assignor levied on the property and where the assignee failed to proceed to execution sale within 5 years of the assignment (MCL 600.6051; MSA 27A.6051).

4. Vendor and Purchaser — Real Property — Standing to Challenge Conveyance.

   The assignee of an equitable interest in real property does not have standing to challenge the conveyance of legal title to the property where his equitable interest therein is protected.

*Richard W. May,* for plaintiffs.

*Paul E. Nettleman,* for defendants Barrett.

*Ronald W. Power,* for defendants Kelly and Moore.

*Murchie, Calcutt & Sondee* (by *Jack E. Boynton),* for defendant Northwestern Savings and Loan Association.

Before: Allen, P.J., and D. F. Walsh and G. R. McDonald,* JJ.

Allen, P.J. The question presented is whether the assignee of a creditor who has obtained a judgment setting aside a fraudulent conveyance of real estate as to such creditor can, to the extent necessary to satisfy his claim, obtain good title by quitclaim deed from the fraudulent grantor of such real estate in lieu of an execution sale of the property? The facts in this case are straightforward and uncontested, leaving a question of law for our determination: Who has title to a certain parcel of land in Emmet County, Michigan, the assignee of a judgment creditor of the grantor-debtor or the grantee of the property by reason of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

a conveyance to him by the fraudulent grantee of the grantor-debtor? Responding favorably to defendants' motion to dismiss pursuant to GCR 1963, 504.2, made at the close of plaintiffs' proofs, the trial judge ruled in favor of the latter, ruling that title to the parcel rested with the grantee and her successors in interest of the grantor-debtor.

In late 1955, Oris E. Moore obtained title by warranty deed to the parcel of land which is the subject of this action. In March, 1958, Oris Moore and his wife, Mildred Moore, who joined in order to dispose of her dower rights in the property, conveyed by warranty deed to Mabel Kobs. On the same day, Mabel Kobs conveyed the property back to Mildred Moore by warranty deed. Both instruments of conveyance were recorded with the Emmet County Register of Deeds on the following day.

In September, 1959, Circuit Court Judge Dehnke, sitting in Iosco County, rendered a judgment for the Oscoda State Savings Bank against Oris Moore in the amount of $5,000 plus interest and costs, arising out of monies owed the bank on a promissory note. Pursuant to an amended judgment authorizing the same, the bank attempted to levy and execute on the property of Oris Moore but was unsuccessful. Thereafter, the Oscoda State Savings Bank filed a bill in aid of execution to set aside the 1958 conveyances from Oris Moore through Mabel Kobs to his wife, Mildred Moore. In December, 1965, and pursuant to this request, Emmet County Circuit Court Judge Fenlon ruled that conveyance of the subject property was fraudulent and that, therefore, the deeds conveying title to Mildred Moore were "set aside and vacated and declared to be null and void and of no effect whatsoever as against the plaintiff, Oscoda State

Savings Bank". In addition, the ruling authorized the bank to proceed upon its writ of execution by allowing the sheriff to levy upon and sell the property unless the debt of $5,000, plus interest and costs, was paid to the bank. This judgment was not recorded until November 1, 1976.

In July, 1966, the Oscoda State Savings Bank assigned its rights in the claim due them from Oris Moore to plaintiff Carl Brownell. Valuable consideration was paid by Brownell for this assignment. Brownell did not record this assignment until November 2, 1976. In lieu of an execution sale of the property which was pending at the time, Brownell sought to obtain a deed from Oris and Mildred Moore. In February, 1969, Oris Moore tendered a quitclaim deed to the property to Brownell in exchange for a discharge of the full debt owed to Brownell as assignee of the bank (by now, $9,000) and for $1,000 cash. This deed was recorded in March, 1969. Mildred Moore refused to sign this quitclaim deed or to tender one of her own to Brownell.

Thereafter, Brownell took possession of the premises, rented the property to tenants, paid all property taxes, and made improvements on the property. In 1973, Brownell deeded the property to Brownell Realty, Inc., a business enterprise which he owned. Brownell Realty retained possession of the premises until ousted by defendant L. B. Kelly sometime after he obtained a warranty deed from Mildred Moore for $100 in April, 1976. This deed was recorded in July, 1976. At the instant trial, Kelly admitted that at the time he took the deed from Mildred Moore he was aware of Brownell's claim to the property and that Brownell had been paying the property taxes on the premises.

On May 5, 1977, plaintiffs filed suit for a decla-

ration of title and for damages and recorded a notice of lis pendens on the property. While this lawsuit was pending, Kelly sold the property to defendants Barrett for $26,500. On May 19, 1978, the Barretts gave defendant Northwestern Savings and Loan Association a mortgage on the property.

At the close of plaintiffs' proofs during trial held May 14 and 15, 1979, the trial court granted defendants' motion to dismiss. The trial court concluded that the 1965 judgment set aside the conveyance from Oris Moore to Mildred Moore only to the extent of Oris Moore's debt, and that, therefore, record title to the property was with Mildred Moore.

In his final order granting defendants' motion for dismissal, the trial judge observed that the only ways in which Brownell could claim paramount title would be through the assignment from Oscoda State Savings Bank of all of its claims against Oris Moore or by quitclaim deed from Oris Moore to Brownell. The trial judge concluded that neither method conferred *legal title* in the plaintiffs and held that title to the subject property was vested in defendants Barrett, subject to the mortgage of defendant Northwestern Savings and Loan Association, as successors in interest to Mildred Moore and L. B. Kelly. Review of the pertinent law and facts in this case persuades us that the trial judge did not err in reaching this conclusion.

It is clear beyond dispute that the grantee from a party conveying by quitclaim deed acquires the right and title which his grantor had and no other. *Roddy v Roddy,* 342 Mich 66; 68 NW2d 762 (1955), *Doelle v Read,* 329 Mich 655; 46 NW2d 422 (1951). Thus, the quitclaim deed from Oris Moore to Brownell conveyed only that interest which Moore had in the property at the time of the conveyance.

Consequently, if Oris Moore had no interest in the property at the time he conveyed to Brownell, then it follows that title could not pass to Brownell superior to Mildred Moore and her successors.

Likewise, although the assignment by Oscoda State Savings Bank of its claims against Oris Moore to Brownell was valid, it conferred no greater proprietary interest in the subject property than possessed by the bank at the time of the assignment. 3 Michigan Law & Practice, Assignments, §§ 11, 12, 16, 17, 35, 36, pp 6, 7, 14, 15, 27, 29. Accordingly, Brownell obtained no greater interest in the subject property by reason of the assignment from the bank than the bank had by reason of its claims against Oris Moore. Hence, legal title could pass to Brownell only if Oris Moore had legal title at the time of his conveyance by quitclaim deed or, only if the bank had some claim to the land by reason of their judgments against Moore taken September, 1959, and December, 1965.

Resolution of the issues raised in this case requires an analysis of the meaning and effect of Judge Fenlon's December, 1965, ruling setting aside the conveyances from Oris and Mildred Moore to Mabel Kobs, and Mabel Kobs to Mildred Moore. Other than the challenge which was raised by Oscoda State Savings Bank as to the validity of the conveyances, it must be presumed that they were valid and that legal title rested solely with Mildred Moore as of the time she conveyed to L. B. Kelly. However, her title to the property was clearly affected by Judge Fenlon's decision since, at least in part, the conveyances were set aside thereby.[1] Accordingly, the question presented can

---

[1] As noted, since Kelly had actual notice of Brownell's claimed interest in the land, and the Barretts had record notice of the dispute surrounding title to the land, Brownell's failure to record Judge

be resolved only by determining the legal effect and meaning of Judge Fenlon's decision that the challenged conveyances to Mildred Moore:

> "* * * are set aside and vacated and declared to be null and void and of no effect whatsoever as against the plaintiff, Oscoda State Savings Bank."

The clear language of this ruling indicates that the challenged conveyances were invalid only with respect to the claims of the Oscoda State Savings Bank, and that otherwise the conveyance to Mildred Moore was valid and effectual. Plaintiffs contend that when Judge Fenlon entered the judgment setting aside the fraudulent conveyance to Mildred Moore, full title in the property was to be returned to Oris Moore, the grantor. In contrast, defendants claim that the conveyance to Mildred Moore was set aside only to the extent necessary to satisfy the creditor's claim. Thus, according to defendants, aside from the interest of Oscoda State Savings Bank, the conveyance remained valid as between the parties thereto, *i.e.,* title remained with the grantee Mildred Moore.

Reference to Judge Fenlon's opinion on the matter indicates that his reason for setting aside the conveyance to Mildred Moore was because of Oris Moore's "actual intent to defraud" his creditor, Oscoda State Savings Bank. Relying on the Uniform Fraudulent Conveyance Act (MCL 566.11 *et seq.;* MSA 26.881 *et seq.)* and the Restatement Restitution, § 168(2), p 684, Judge Fenlon concluded that the conveyance to Mildred Moore was subject to the claims of the grantor's creditor.

---

Fenlon's order and the assignment from the bank until after Mildred Moore deeded the property to Kelly, cannot affect his interest in the property.

Section 9 of the Uniform Fraudulent Conveyance Act (1919 PA 310, § 9) states:

"(1) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such purchaser;

(a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or

(b) Disregard the conveyance and attach or levy execution upon the property conveyed.

(2) A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may retain the property or obligation as security for repayment." MCL 566.19; MSA 26.889.

Under § 9 of the act, a creditor can have a fraudulent conveyance set aside or annulled or he can ignore the conveyance and levy execution on the property. The first alternative, § 9(1)(a), is equitable, while the second option, § 9(1)(a), is a legal remedy based on the theory that the fraudulent transfer, though valid as between the parties, is void as to the defrauded creditors. *Morse v Roach,* 229 Mich 538; 201 NW 471 (1924), *Hyde Properties v McCoy,* 507 F2d 301 (CA 6, 1974), *Baker v Penecost,* 171 Tenn 529; 106 SW2d 220 (1937), *Wagner v Trout,* 124 Cal App 2d 248; 268 P2d 537 (1954), *Healy-Owen-Hartzell Co v Montevideo Farmers & Merchants Elevator Co,* 170 Minn 290; 212 NW 455 (1927), *Simon v Sorrentino,* 145 Pa Super 364; 20 A2d 805 (1941).

In this case, the defrauded creditor, Oscoda State Savings Bank, could have taken either of the two routes in satisfying its claim against Oris

Moore. It could have proceeded against the property as though title still stood in the name of the grantor. MCL 566.19(1)(b); MSA 26.889(1)(b), *Trask v Green,* 9 Mich 358 (1861), *Pierce v Hill,* 35 Mich 194 (1876), *Morris v Wolfe,* 48 Mich App 40; 210 NW2d 16 (1973), thus bringing a direct action against Oris Moore to both disregard the conveyance as fraudulent and to levy execution upon the conveyed property. 37 CJS, Fraudulent Conveyances, §§ 306-308, pp 1138-1141, 37 Am Jur 2d, Fraudulent Conveyances, §§ 161-163, pp 830-831. This the bank originally attempted to do but was unsuccessful for unknown reasons.

At the same time, the bank had the option to proceed under the statute by bringing an equitable action to set aside the fraudulent transfer. MCL 566.19(1)(a); MSA 26.889(1)(a), *People's Mortgage Corp v Wilton,* 234 Mich 252; 208 NW 60 (1926). This is precisely what the bank did in the instant case. Thus, rather than proceed with its remedy to treat the property as if title remained in the name of Oris Moore, the bank filed a bill in aid of execution to set aside the conveyance. In so doing, the bank, as creditor, was only entitled to have the conveyance set aside "to the extent necessary to satisfy [its] claim". *Pierce v Hill, supra, Petretti v Finnigan,* 68 Misc 2d 1007; 328 NYS2d 705 (1972), *Covington v Murray,* 220 Tenn 265; 416 SW2d 761 (1967), *Simon v Sorrentino, supra, Emmi v Patane,* 128 Misc 901; 220 NYS 495 (1927). However, in all other respects, title to the property remained vested in the grantee, with the conveyance, though invalid as to creditors of the grantor, remaining operative as between the parties to the transfer. *Jackson v Cleveland,* 15 Mich 94 (1866), *Cool v Snover,* 38 Mich 562 (1878), *Wheeler v Wallace,* 53 Mich 364; 19 NW 37 (1884), *Williams v Clink,* 90

Mich 297; 51 NW 453 (1892), *Lala v Maiorana,* 166 Cal App 2d 724; 333 P2d 862 (1959). The effect of the order setting aside the fraudulent conveyance for the benefit of a creditor was to give absolute title to the grantee of the conveyance (subject to any preexisting interests in the property), *id.,* and an equitable lien on the property, to the creditor for the amount of his claims against the defrauding grantor. *McCaslin v Schouten,* 294 Mich 180; 292 NW 696 (1940), *In the Matter of Edwin Luftman,* 245 F Supp 723 (SD NY, 1965), *United States v Lester,* 235 F Supp 115 (SD NY, 1964), 37 CJS, *supra,* § 451, p 1302, 37 Am Jur 2d, *supra,* § 230, p 885.

Accordingly, Judge Fenlon's 1965 order that the conveyance to Mildred Moore was set aside as against the Oscoda State Savings Bank had the effect of permitting legal title to remain vested in Mildred Moore, subject to the bank's claim against the grantor in the form of an equitable lien against the property.

Applied to the facts in this case, it is clear that Brownell took no interest in the property by reason of his quitclaim deed from Oris Moore because Oris Moore had no valid title to the land at the time he tendered the deed; *i.e.,* title at this point was vested in Mildred Moore. At the same time, Brownell, as assignee of the bank's claims against Oris Moore, took whatever interest the bank may have had as the defrauded creditor of the grantor. *Howd v Breckenridge,* 97 Mich 65; 56 NW 221 (1893), *Noble v McKeith,* 127 Mich 163; 86 NW 526 (1901), *Michal v Adair,* 66 Cal App 2d 382; 152 P2d 490 (1944). As previously indicated, this interest was in the form of an equitable lien against the property for the amount of the claim asserted against the grantor. The clear language of the

judge's order as well as the statute relied on support this conclusion. See also, Restatement Restitution, §§ 160, 168(2), pp 640, 684.

Having decided that the legal title to the property is in the defendants Frederick C. and Debra S. Barrett, subject to the mortgage of defendant Northwestern Savings and Loan Association, we next inquire whether the Barretts hold said property free and clear of any lien or claim of the plaintiffs. We have just stated that under Judge Fenlon's order Brownell, as assignee of the bank, acquired whatever interest the bank may have had. We also stated that the bank's interest was an equitable lien against the property for the amount of the assignor-bank's judgment on September 29, 1959, against Oris Moore. The amount of that judgment was $5,000 on the note, plus costs of $49.50 and interest at six percent from December 4, 1958.

But is the equitable lien in the above amount now held by plaintiffs as assignees of the bank barred by the statute of limitations or by laches? Following oral argument by the parties on appeal, this Court ordered supplemental briefs filed on this issue. Those briefs have been filed. Plaintiffs' supplemental brief takes the position that plaintiffs' claim to title is not equitable but is a full legal title and, accordingly, the statute of limitations does not apply. Defendants' supplemental briefs argue that plaintiffs' interest is only an equitable interest which is barred by either MCL 600.5809(3); MSA 27A.5809(3) or by MCL 600.6051; MSA 27A.6051.

MCL 600.5809(3); MSA 27A.5809(3) provides a ten-year period of limitations for suing upon or renewing a judgment. Since the judgment entered September 29, 1959, was never renewed, the un-

derlying debt ceased to be enforceable September 29, 1969. However, prior to the ten-year period having run, the Oscoda State Savings Bank filed two executions with respect to the judgment. One was filed November 14, 1960, and another was filed November 12, 1965. The assignment of the bank's claims to Carl Brownell was July 12, 1966. As noted earlier in this opinion, Brownell did not proceed with an execution sale of the property but sought to obtain deeds from both Oris and Mildred Moore.

MCL 600.6051; MSA 27A.6051 provides in relevant part:

"No levy by execution on real estate is valid:

*   *   *

"(2) After the expiration of 5 years from making the levy, unless the real estate is sold thereon or within such period."

We consider the above statute applicable to the instant situation and hold that because plaintiffs failed to proceed to an execution sale within five years of July 12, 1966—the date plaintiffs received an assignment from the bank—plaintiffs are now barred from proceeding to enforce their claim. Since we have determined that plaintiffs' interest in the property was an equitable interest and not, as claimed in plaintiffs' initial and supplemental briefs, full legal title, we reject plaintiffs' argument that limitations of action are not applicable.

Plaintiffs further contend that legal title cannot rest in Kelly because he paid Mildred Moore only a nominal sum for the property. This issue is stated in plaintiffs' brief: "Can a person who paid $100.00 for property valued at more than $25,000 be a bona fide purchaser for value?" We are not

persuaded. Kelly's knowledge of the plaintiffs' claim in the property and his payment of only $100 for property worth considerably more is irrelevant since he purchased title to the land from the person who then had the actual legal title to give. Therefore, plaintiffs cannot challenge the conveyance of legal title between the two parties so long as their equitable interest therein is protected. Since Kelly and all of his successors in interest took title to the land subject to the plaintiffs' equitable lien, as set forth above, we conclude that plaintiffs lack standing to challenge the validity of the conveyance between Mildred Moore and Kelly.

Affirmed. Costs to defendants.