*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TYLER BOOTH and ALYSSA BOOTH, Copersonal Representatives of the ESTATE OF RAYMOND HAROLD BOOTH,

        Plaintiff/Counterdefendant-Appellee,

v

MARIANNE STOCKTON,

        Defendant/Counterplaintiff-Appellant.

UNPUBLISHED
December 19, 2024
9:15 AM

No. 367629
Wayne Probate Court
LC No. 2022-878252-CZ

Before: O'BRIEN, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Raymond Booth (the decedent) was given a quitclaim deed to real property by his mother, defendant, when the decedent was still alive. After the decedent passed away, plaintiff, the Estate of Raymond Harold Booth, acquired title to the property, and the decedent's children, Tyler Booth and Alyssa Booth,[1] were named the copersonal representatives of plaintiff. Tyler and Alyssa decided to sell the property, but unbeknownst to them, the federal government recorded a tax lien against the property while it was still owned by defendant for unpaid taxes that defendant owed. Plaintiff paid off the tax lien using proceeds from the property sale, then sued defendant for indemnification and unjust enrichment. Plaintiff also alleged that defendant was liable for claim and delivery when she refused to turn over to plaintiff a vehicle that was owned by the decedent. Defendant counterclaimed, seeking storage fees for keeping the vehicle on her property. The probate court granted plaintiff's motion for summary disposition on its request for the return of the vehicle and dismissed defendant's counterclaim for storage fees, and the case proceeded to trial on the dispute over the tax lien. After hearing testimony, the probate court found that plaintiff was entitled to be repaid for satisfying the tax lien. Defendant appeals as of right the judgment entered by the probate court against her. We affirm the probate court's dismissal of defendant's counterclaim but reverse the judgment for plaintiff.

---

[1] This opinion will refer to Tyler and Alyssa by their first names to avoid confusion.

Although the probate court heard testimony from Tyler, Alyssa, defendant, and a real-estate agent, the relevant facts are not in dispute. In January 2018, a notice of federal tax lien was filed with the register of deeds against the property in question for a tax debt that defendant owed the federal government. At the time, defendant owned the property. In October 2018, defendant gifted the property to the decedent via quitclaim deed, and that deed was recorded in November 2018.

The decedent lived at the property until his death in 2021. Because plaintiff did not have the funds to maintain the property, Tyler and Alyssa decided to sell it and retained a real-estate agent to handle the sale. Plaintiff entered into a contract to sell the property in August 2021. After entering that agreement, Tyler, Alyssa, and the agent discovered the tax lien recorded in January 2018. Because plaintiff agreed to convey a warranty deed to the buyers, plaintiff paid off the lien with the sale proceeds so that the sale went through. Plaintiff then sued defendant for indemnification and unjust enrichment because the underlying debt that caused the lien to be recorded was defendant's obligation. The probate court agreed that defendant was required to pay plaintiff to reimburse it for removing the tax lien because the original debt was incurred by defendant. The judgment entered for plaintiff represented the amount plaintiff paid to remove the tax lien plus costs.

## I. INDEMNIFICATION AND UNJUST ENRICHMENT

Defendant argues that the probate court misconstrued or misapplied property law when it refused to dismiss plaintiff's claims for indemnification or unjust enrichment and entered a verdict in favor of plaintiff on those claims. We agree with defendant that the probate court erred as a matter of law in allowing plaintiff to seek compensation for its payment of the tax lien.

Defendant's central argument is that plaintiff's claims are legally untenable under the facts. Defendant made this argument before trial, during trial, and now after trial. While the trial court made factual findings following trial, defendant's argument does not concern those findings. The facts relevant to defendant's argument are not contested, and the outstanding questions raised by the argument—including whether equitable relief was available under the uncontested facts—are ones of law. See *Gleason v Kincaid*, 323 Mich App 308, 317; 917 NW2d 685 (2018). Questions of law are reviewed de novo. *Ligon v Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007); *Gleason*, 323 Mich App at 317.

The dispute in this case arose after plaintiff decided to sell the property. Plaintiff acquired the decedent's interest in the property upon his passing, and it was this interest that plaintiff sought to sell. Understanding what this interest was begins with understanding the difference between a quitclaim deed and a warranty deed.

A quitclaim deed transfers any interest the grantor may have in the property. *Roddy v Roddy*, 342 Mich 66, 69; 68 NW2d 762 (1955). See also MCL 565.3. The grantee of a quitclaim deed acquires only the grantor's interest at the time of the conveyance, whatever that interest may be. See *Brownell Realty, Inc v Kelly*, 103 Mich App 690, 695; 303 NW2d 871 (1981); *Eastbrook Homes, Inc v Dep't of Treasury*, 296 Mich App 336, 349; 820 NW2d 242 (2012). A quitclaim deed "neither warrants nor professes that the title is valid." *Mich Dep't of Nat Res v Carmody-Lahti Real Estate, Inc*, 472 Mich 359, 377-378; 699 NW2d 272 (2005) (quotation marks and citation omitted). A warranty deed, in contrast, conveys title "in fee simple," and as part of the

deed, the grantor covenants that "the grantor has good, marketable title and guarantees to the grantee the right of quiet possession." *Eastbrook Homes, Inc*, 296 Mich App at 348.

The tax lien at issue was recorded against the property while it was owned by defendant. Thereafter, defendant quitclaimed the property to the decedent. Because the tax lien was recorded, the decedent's interest in the property was subject to the tax lien. See *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 392; 761 NW2d 353 (2008) ("Under Michigan's recording statutes, all subsequent owners or encumbrances take subject to recorded liens, rights, or interests."). Defendant did not grant the decedent a warranty deed, meaning that she did not warrant that she was granting title in fee simple, nor did she guarantee that the decedent was receiving good and marketable title. See *Eastbrook Homes, Inc*, 296 Mich App at 348. By passing title to the decedent via quitclaim deed, defendant gave the decedent only her interest in the property. See *Brownell Realty, Inc*, 103 Mich App at 695; *Eastbrook Homes, Inc*, 296 Mich App at 349. That interest was subject to the recorded tax lien, and it was that encumbered interest that plaintiff acquired upon the decedent's passing.[2]

When plaintiff decided to sell the property, it could only convey its rights therein, and those rights were encumbered by the tax lien. See *Gowdy v Gordon*, 240 Mich 558, 564; 215 NW 702 (1927) (explaining that a grantor "could not convey any rights he did not possess"). But even with this encumbrance, plaintiff could sell the property in a number of ways, including selling the property via quitclaim deed without paying the tax lien. Plaintiff did not choose this route, however. It instead entered into a purchase agreement in which it agreed to provide a warranty deed for the property. This created a problem for plaintiff—it could not grant a warranty deed to the property because its interest in the property was subject to the tax lien. Plaintiff could pay the tax lien to fix this problem, or it could breach the purchase agreement. Plaintiff chose to pay the lien, which led to this action.

Plaintiff contends that it was forced to pay the tax lien not because of the purchase agreement it signed but because the existence of the recorded lien on plaintiff's property made plaintiff liable for it. This is incorrect—the existence of the tax lien on plaintiff's property did not make plaintiff or its personal representatives liable for the lien. Neither the federal statutes cited by plaintiff nor the fiduciary duties of plaintiff's personal representatives suggest that plaintiff or its representatives could be held liable for the tax lien if it was not paid.[3] The lien was attached to the property, not plaintiff or its personal representatives.

---

[2] Because the tax lien was recorded, both the decedent and plaintiff had constructive notice of it when each acquired the property. See *Piech v Beaty*, 298 Mich 535, 538; 299 NW 705 (1941); *Richards v Tibaldi*, 272 Mich App 522, 540; 726 NW2d 770 (2006).

[3] Plaintiff cites 31 USC 3713, which can impose liability on an estate for an unpaid "claim" owed to the federal government by the estate's deceased debtor, and a "claim" for purposes of that statute has a specific definition, see 31 USC 3701(b)(1). Plaintiff does not explain how a federal tax lien on property held by the decedent created a "claim" held by the federal government against the decedent or plaintiff for purposes of 31 USC 3713, so it is not apparent that this statute applies. Plaintiff also cites to 26 USC 6332(d), which imposes personal liability on any person who fails

Still, plaintiff paid the tax lien, and the question remains whether plaintiff could recover the amount it paid from defendant, whose failure to pay her taxes prompted the recording of the lien. Plaintiff sought recovery from defendant under theories of common-law indemnification and unjust enrichment. The probate court did not specify on which ground it granted plaintiff relief, so we address each in turn.

Common-law indemnification derives from the equitable theory that where the wrongful act of a party results in another party being held liable, the latter is entitled to restitution for its loss. *Cove Creek Condo Ass'n v Vistal Land & Home Dev, LLC*, 330 Mich App 679, 711; 950 NW2d 502 (2019). This Court has elaborated on the right to indemnification as follows:

> The right [to indemnification] exists independently of statute, and whether or not contractual relations exist between the parties, and whether or not the negligent person owed the other a special or particular legal duty not to be negligent. Common-law indemnity is intended only to make whole again a party held vicariously liable to another through no fault of his own. This has been referred to as "passive" rather than "causal" or "active" negligence. It has long been held in Michigan that the party seeking indemnity must plead and prove freedom from personal fault. This has been frequently interpreted to mean that the party seeking indemnity must be free from active or causal negligence. Therefore, a common-law indemnification action cannot lie where the plaintiff was even .01 percent actively at fault. [*Botsford Continuing Care Corp v Intelistaf Healthcare, Inc*, 292 Mich App 51, 62-63; 807 NW2d 354 (2011) (quotation marks and citations omitted).]

Plaintiff cannot recover the amount it paid for the tax lien from defendant under a theory of common-law indemnification for at least two reasons. First, plaintiff was not required to pay the tax lien as a result of defendant's wrongful conduct. True, the lien was recorded because defendant failed to pay her taxes. But that wrongful conduct did not result in plaintiff being liable for the tax lien. Defendant quitclaimed the property to the decedent after that lien was recorded, granting the decedent defendant's interest in the property. That interest, as everyone knew or should have known, was subject to the tax lien. After acquiring that interest upon the decedent's death, plaintiff could have sold the property via quitclaim deed without satisfying the tax lien. So,

---

to surrender property subject to a levy. Overlooking the fact that the statute concerns levies not liens, 26 USC 6332(d) only imposes liability for misconduct, and the possibility that plaintiff or its personal representatives could be held personally liable for refusing to honor a properly-filed tax lien does not support plaintiff's argument that it was liable for the lien in the first place.

As for the fiduciary duties Tyler and Alyssa owed plaintiff as copersonal representatives, plaintiff fails to explain how those duties made Tyler and Alyssa liable for the tax lien. The closest plaintiff gets is asserting that Tyler and Alyssa could be liable under MCL 700.3712 for "damages or losses if they use estate assets to satisfy obligations other than creditors and estate beneficiaries." Accepting this overbroad assertion as true for purposes of argument, it at most establishes that Tyler and Alyssa could be liable to the estate for paying the tax lien using estate assets, which does not support that they were ever liable for the tax lien.

while defendant's failure to pay her taxes caused the tax lien to be imposed, plaintiff was never liable for the lien as a result of defendant's wrongful conduct.

Second, and relatedly, plaintiff only became (potentially) liable for the tax lien after plaintiff agreed to provide a warranty deed as part of a purchase agreement for the sale of the property. This demonstrates that to any extent that plaintiff was liable for the tax lien, it was at least partially (if not entirely) plaintiff's fault. By agreeing to provide a warranty deed for the property, plaintiff agreed to provide a title it did not possess—good and marketable title in fee simple. *Eastbrook Homes, Inc*, 296 Mich App at 348. To provide a warranty deed and thus fulfil the terms it agreed to, plaintiff had to satisfy the tax lien. Plaintiff was therefore actively at fault for any liability it incurred for the tax lien. For this reason, as well, plaintiff cannot recover the amount it paid to satisfy the tax lien under a theory of common-law indemnification.

Turning to plaintiff's alternative theory for recovery, unjust enrichment allows for the equitable right of restitution when one has been unjustly enriched at the expense of another. *Mich Ed Employees Mut Ins Co v Morris*, 460 Mich 180, 198; 596 NW2d 142 (1999). A claim of unjust enrichment can arise when the plaintiff confers a benefit on the defendant and it would be inequitable to allow defendant to retain that benefit without compensating the plaintiff. See *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 195; 729 NW2d 898 (2006).

Plaintiff contends that defendant was unjustly enriched when plaintiff paid the tax lien because that payment satisfied defendant's tax obligation, and it would be unfair to allow defendant to retain this benefit without compensating plaintiff. This argument fails because plaintiff had to pay the tax lien to fulfill the terms of the purchase agreement it signed for the property. As explained by a leading treatise in this area:

> A third party is not unjustly enriched when it receives a benefit from a contract between two other parties, where the party benefited has not requested the benefit or misled the other parties. . . . Otherwise stated, the mere fact that a third person benefits from a contract between two other persons does not make such third person liable in quasi-contract, unjust enrichment, or restitution. [66 Am Jur 2d, Restitution and Implied Contracts, § 32, p 628. See also *Morris Pumps*, 273 Mich App 187, 196; 729 NW2d 898 (2006) (adopting this statement as an accurate statement of the law in Michigan).]

Applying this principle here, plaintiff cannot establish that defendant was unjustly enriched when plaintiff paid the tax lien. The purchase agreement plaintiff signed required plaintiff to provide a warranty deed for the property. To do that, plaintiff had to pay the tax lien. While payment of the tax lien had the effect of relieving defendant of her tax obligation, defendant did not request this benefit, nor did defendant mislead the parties to the purchase agreement. There is no evidence that defendant assured plaintiff that she would repay plaintiff for satisfying the lien, nor any evidence that defendant was involved in plaintiff's decision to enter into the purchase agreement that obligated plaintiff to satisfy the lien. Defendant was simply a third party who received a benefit from the purchase agreement. On such facts, plaintiff cannot establish that defendant was unjustly enriched. See *Karaus v Bank of New York Mellon*, 300 Mich App 9, 24-25; 831 NW2d 897 (2012) (holding that a party was not unjustly enriched because the only benefit

the party received was the result of a contract between two other entities, and the party did not request the benefit or mislead the entities to the agreement).

In sum, the probate court erred by not considering the nature of the conveyance made to the decedent to determine if indemnification or unjust enrichment was available to plaintiff after it paid the tax lien recorded against the property. The tax lien was recorded before defendant conveyed the property by quitclaim deed to the decedent, and when the property passed to plaintiff upon the decedent's passing, plaintiff took the property subject to the lien. When plaintiff agreed to provide a warranty deed as part of a purchase agreement to sell the property, plaintiff obligated itself to pay the tax lien, so it was not entitled to indemnification or restitution from defendant. Given the foregoing, the probate court should have granted summary disposition in favor of defendant, granted defendant's motion for involuntary dismissal, or found that plaintiff's claims ultimately were without merit. Accordingly, we reverse the judgment for plaintiff.[4]

## II.  REMAINING CLAIMS

Defendant next argues that it was error for the probate court to grant plaintiff's motion for partial summary disposition on defendant's counterclaim. We disagree.

The decedent owned a 2010 GMC Sierra vehicle. After it was damaged in a collision, the decedent left the 2010 GMC Sierra at defendant's residence. In its complaint, plaintiff included a count for claim and delivery on the basis that defendant refused to allow plaintiff access to defendant's property to retrieve the vehicle. Defendant counterclaimed for unjust enrichment, arguing that she was entitled to damages for storing the undriveable vehicle on her property. Defendant contended that she could have had the vehicle declared abandoned and towed away under MCL 257.252a, but she instead allowed the decedent to store the vehicle there, and now she would only allow plaintiff to take the vehicle if it paid defendant reasonable fees for storing the vehicle on her property for years instead of having it towed.

Plaintiff moved for summary disposition on defendant's counterclaim, arguing that defendant's claim was time-barred. Plaintiff explained that defendant had previously filed a claim with plaintiff to recover storage fees for storing the 2010 GMC Sierra, and plaintiff denied that claim on September 17, 2021. Following that denial, defendant had 63 days to bring an action against plaintiff, see MCL 700.3806(1), which gave defendant until November 19, 2021. Defendant's counterclaim filed in December 2022 was untimely, according to plaintiff, which entitled plaintiff to have that claim against it dismissed. In support of its motion, plaintiff offered (1) proof that defendant submitted a claim for about $5,000 for storing the vehicle on her property and (2) a copy of a notice plaintiff sent to defendant disallowing her claim in September 2021. On the basis of this motion and evidence, the probate court granted judgment for plaintiff and dismissed defendant's counterclaim.

On appeal, defendant argues that this was error because her counterclaim was not untimely; she contends that she counterclaimed for unjust enrichment to recover reasonable storage fees she

---

[4] In light of this conclusion, we need not address defendant's other arguments related to plaintiff's claims for indemnification and unjust enrichment.

incurred caring for the vehicle instead of treating it as abandoned and having it towed, and that claim could not be untimely because it did not even accrue until the probate court "entered an order for claim and delivery." We disagree.

A trial court's decision on a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion brought under MCR 2.116(C)(10) tests the factual sufficiency of the complaint by considering all of the evidence submitted by the parties in the light most favorable to the nonmoving party to determine whether there exists a genuine issue of material fact for trial. *El-Khalil*, 504 Mich at 159-160. If the evidence fails to establish a genuine issue of material fact, then the court must decide which party is entitled to judgment as a matter of law on the undisputed facts. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016).

Plaintiff submitted documentary evidence establishing both that defendant submitted a claim to plaintiff for storage fees for keeping the decedent's vehicle at her property and that plaintiff denied this claim in September 2021. That decision was not timely challenged by defendant as provided in MCL 700.3806(1). Defendant now argues that her counterclaim for unjust enrichment is distinguishable from the claim she filed with plaintiff for storage fees. It is obvious, however, that defendant has simply rehashed her claim for storage fees as a claim for unjust enrichment. At the heart of both claims is defendant's request to be compensated for storing the vehicle on her property. Because this claim was rejected by plaintiff and defendant failed to timely challenge this rejection, defendant's claim for storage fees in this action was untimely. See MCL 700.3806(1); *In re Estate of Weber*, 257 Mich App 558, 561-562; 669 NW2d 288 (2003).

Defendant insists that her claim for unjust enrichment could not be untimely because it did not even accrue until the probate court ordered defendant to return the vehicle on May 24, 2023; until that time, defendant contends, she was still suffering damages by storing the vehicle. That defendant was continuing to incur damages does not mean that her claim had not accrued, however. See, e.g., *Sunrise Resort Ass'n, Inc v Cheboygan Co Rd Comm*, 511 Mich 325, 336; 999 NW2d 423 (2023) (explaining that under MCL 600.5827, for purposes of the statute of limitations, a claim accrues when the wrong occurs, regardless of when damage results). We also note that the claim defendant submitted to plaintiff did not state that the storage fees were not yet due, nor did it state that the extent of the storage fees was still uncertain. See MCL 700.3804(1)(a). Nor did defendant cite those reasons as a basis for granting an extension of the 63-day cutoff to contest plaintiff's denial of her claim for storage fees under MCL 700.3804(2). Instead, to get around her failure to timely contest the denial of her request for storage fees, defendant tried to repackage her claim for storage fees as a claim for unjust enrichment for the storage fees. The probate court did not err by considering this the same claim that plaintiff denied and accordingly granting summary disposition in favor of plaintiff on grounds that defendant's claim was untimely.

The trial court's decision to dismiss defendant's counterclaim is affirmed. The trial court's August 15, 2023 judgment is reversed.

/s/ Colleen A. O'Brien
/s/ Christopher M. Murray
/s/ Sima G. Patel