ROSSMAN *v.* WARD.

1. BONA FIDE PURCHASER—PERSONAL PROPERTY—NOTICE.
    Where the purchaser of personal property has notice of facts which would put an ordinarily prudent man upon inquiry, he cannot be considered a *bona fide* purchaser if he neglect to take such care of his own interests as an ordinarily prudent man would.

2. REPLEVIN—BONA FIDE PURCHASER—ACTUAL NOTICE—QUESTION OF LAW.
    Where defendant, in replevin proceedings for the possession of an automobile, purchased it from a stranger without making any inquiry as to whether plaintiffs' claim, of which he had actual notice, had been discharged or not, he was not, as a matter of law, a *bona fide* purchaser.

Error to Mecosta; Lamb (Fred S.), J., presiding. Submitted April 21, 1920. (Docket No. 80.) Decided June 7, 1920.

Replevin by Manning Rossman and others against Alfonzo Ward for the possession of an automobile. Judgment for plaintiffs. Defendant brings error. Affirmed.

*J. Claude Youdan (Frank J. Powers,* of counsel), for appellant.

*Cogger & Dumon,* for appellees.

Plaintiffs are farmers, owning and operating a farm near Lakeview, Montcalm county. For several years they had in their employ a man named Harry Stroup. There is no dispute as to the terms of his employment except for the season of 1918. While in the employ of plaintiffs in 1917, Mr. Stroup concluded he wanted an automobile but did not have the money to pay for it and approached plaintiffs for financial assistance in the matter. These negotiations resulted in the purchase by Mr. Stroup of a second hand Ford for $300. To pay for the car he gave his note for $50 indorsed by one of the plaintiffs, and they furnished the balance of $250 in cash, taking a paper which amounted to a chattel mortgage on the machine to secure the payment of this sum. Mr. Stroup made but few payments on the amount due on this chattel mortgage during the balance of that season. The parties disagree as to the arrangements for the season of 1918. The plaintiffs claim they were to pay Stroup $30 per month in cash and credit him with $20 per month on the amount due and if he remained the full season of 8 months, they were to credit him with the further sum of $80 which was to be treated as a bonus. He insists he was to have $60 per month if he stayed the full season, and $50 per month if he quit before the season ended. It is undisputed that Stroup did not work the full season but it is a disputed question as

to whether he was discharged or quit of his own accord.

Stroup and one of the plaintiffs took the car to the garage of one Bollinger at Lakeview, the idea being to have some repairs made upon it and to have it sold by Mr. Bollinger in order that both parties might get their money out of it. Bollinger was informed both orally and in writing of plaintiffs' claim on the car. He advertised the car for sale. Defendant saw the advertisement and went to the Bollinger garage to see the car. It suited him and the price was satisfactory but he did not want to pay all cash, was willing to pay $150 in cash and give a property note for the balance of $100. Bollinger told him plaintiffs owned the car or had a claim on it, the testimony varies as to the exact language used, and referred defendant to them to see about the terms of payment. Shortly after this defendant went to plaintiffs' place and there had a talk with one of them about buying the car and about giving a property note. They were willing to accept any note they could use at their bank but did not want to take a property note. About two weeks after this Mr. Stroup went to the Bollinger garage at Lakeview and, while Mr. Bollinger was in the back room, took the car out although he had been forbidden by Bollinger so to do. He drove to Morley where he left the car in a garage and went over to see the defendant. Defendant was not acquainted with Mr. Stroup until he came to his place. Mr. Stroup told defendant he had the car in his possession; that he would sell the car to him. Some of defendant's testimony is significant. He testifies on cross-examination:

"Q. * * * Why did you tell him you didn't want to get in any mix-up?
"A. On the garage at Morley.
"Q. Why did you do that?

"*A*. His saying it was the same car. I didn't know whether he owned the car or not.

"*Q*. Didn't you know it was the same car you tried to buy of Rossmans?

"*A*. He told me it was."

Defendant claims to have then bought the car of Stroup, paying him $150 in cash and giving him his note for $90.

Plaintiffs brought this action of replevin and defendant gave the required bond and retained possession of the car. The trial judge submitted the case to the jury upon the question of the plaintiffs' lien, they claiming it to be $147, and Mr. Stroup claiming it to be but $90, which amount had been tendered by him before the trial. The trial judge was of the opinion that inasmuch as the undisputed testimony and the admissions of the defendant established the fact that defendant had actual notice of plaintiffs' claim before he purchased the car he could not claim the benefits of a *bona fide* purchaser. He therefore withdrew the question of whether defendant was a *bona fide* purchaser from the jury. The jury found the lien to be $147, and to review a judgment entered in accordance with the verdict defendant brings the case here.

FELLOWS, J. (*after stating the facts*). There are numerous assignments of error but under the well recognized rule we shall only consider those relied upon by appellant in his brief. We need not consider the effect to be given the filing of the chattel mortgage without having attached to it the affidavit required by the statute (3 Comp. Laws 1915, § 11988), or whether the proof sufficiently established that the original mortgage as filed did not have such affidavit attached, as the trial judge disposed of this feature of the case upon the ground that defendant had actual notice and therefore whether he had constructive notice or not

was unimportant. Defendant, in answer to a question asked by a juror as to whether he made any attempt to find out whether the Rossman claim had been satisfied, replied that he did not, and added that he never thought of it until after he had paid the money. While this answer was not in strict accord with other testimony given by defendant, it is urged by defendant's counsel that, when taken in connection with other testimony, it makes the question of *bona fides* a question for the jury. The difficulty with defendant's contention lies in the fact that he is invoking the rules of the law merchant, of negotiable instruments, to a case not involving commercial paper. We are not here dealing with the purchase of a promissory note in due course or with what constitutes *mala fides* in such purchase. We are here dealing with the purchase of personal property upon which the plaintiffs had a lien, of which lien defendant had actual notice before he purchased the property. That the rule is different is settled by this court. In *Detroit Nat. Bank* v. *Union Trust Co.*, 145 Mich. 656, it was said:

"It is a general rule applicable to transactions not involving commercial paper, that where one has notice of facts which would put an ordinarily prudent man upon inquiry, he cannot be considered a *bona fide* purchaser, if he neglects to take such care of his own interests as an ordinarily prudent man would do, but that rule has not been applied to commercial paper."

In the instant case the proofs are undisputed and it is admitted that when defendant first saw the car and negotiated for its purchase he was informed that plaintiffs owned it or had a claim upon it; he saw one of plaintiffs and was unable to make satisfactory terms of payment; about two weeks later a stranger offered him the same car he had tried to purchase of plaintiffs and told him it was the same car. He says he did not know whether this stranger owned the car or

not. He claims to have then bought it without inquiry as to whether plaintiffs' claim had been dis- charged or not. Under such circumstances he is not a *bona fide* purchaser, and the fact, if it be a fact, that in his anxiety to acquire the car on favorable terms he forgot the plaintiffs' claim, his negotiations with them, or that he had notice of such claim, does not alter the situation. He was not a *bona fide* pur- chaser and the trial judge correctly disposed of the case.

The judgment is affirmed.

MOORE, C. J., and STEERE, BROOKE, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.