*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ERIE ADAMS,

      Plaintiff-Appellant,

v

SULBA BROWN,

      Defendant-Appellee,

and

CLARENE A. MCCORD and CLARENCE A.
MCCORD,

      Defendants.

UNPUBLISHED
March 24, 2020

No. 346503
Oakland Circuit Court
LC No. 2017-161212-CH

Before: M. J. KELLY, P.J., and FORT HOOD and BORRELLO, JJ.

PER CURIAM.

In this case involving a property dispute, plaintiff, Erie Adams, appeals as of right the judgment quieting title in favor of defendant, Sulba Brown, following a bench trial. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

In June 2012, plaintiff purchased real property in Southfield, Michigan. Over a year later, on November 8, 2013, plaintiff was arrested on a number of federal charges related to drug-trafficking. The arrest occurred at a property plaintiff was renting, and Clarene McCord, the mother of plaintiff's children, was present at that time. Since his arrest, plaintiff has remained incarcerated.[1] During his first week in jail, he was visited by Clarene and by plaintiff's adult son,

---

[1] Following a jury trial, plaintiff was convicted of a number of drug-trafficking and drug-related federal offenses.

Evie Adams. Although plaintiff testified that he did not discuss the Southfield property with them, Clarene testified that plaintiff told her that the property was supposed to be for plaintiff and his children and that he wanted the children to grow up there. Clarene also testified that plaintiff wanted the property out of his name because he was concerned that "the feds" would seize it the way that they had taken his vehicle and other properties. Somewhat similarly, plaintiff testified that he told Clarene that if she took the house out of his name, she was to put it in their children's names to ensure that "the house would be safe so it would be theirs."

Thereafter, on November 13, 2013, less than a week after plaintiff was arrested on federal charges, a quitclaim deed purporting to transfer the Southfield property from plaintiff to Clarene's brother was signed and notarized at a UPS store in Eastpointe, Michigan. The notary testified that the name on the identification was "Evie Jerrod Adams, IV,"[2] but the signature on the quitclaim deed was "Erie Adams," i.e. plaintiff's name. The notary did not have any specific recollection of the transaction, but she testified that she has never notarized a document that she did not physically observe the person listed on the identification sign. Because plaintiff was incarcerated at the time the deed was signed and notarized, it was impossible for him to have been the individual who signed the deed purporting to transfer his property to Clarene's brother.

Clarene began residing at the Southfield address in November 2013 (the same month that plaintiff was arrested). At some point, plaintiff gave her a power of attorney; plaintiff stated that it was given to Clarene "after" the November 13, 2013 quitclaim deed was signed. Plaintiff's friend, Charlene Lee, testified that plaintiff signed the power of attorney without understanding what it was during his February 2015 sentencing hearing on the federal convictions. Plaintiff, however, testified that he gave her the power of attorney because, although he did not trust Clarene, he was trying to help his children. Plaintiff also testified that sometime before August 2016, he learned that his money was gone and his bank accounts were closed. Plaintiff posited that Clarene had used the power of attorney to close the accounts. He stated that, as a result, he cancelled Clarene's power of Attorney and gave one to Lee in August 2016.

Earlier, in January 2016, Clarene's brother quitclaimed the Southfield property to Clarene. And, in October 2016, Clarene contacted a realtor to sell the property. Lee, learning of the attempt to sell the property, contacted the realtor and told him that Clarene did not have a valid title to the property. As a result of Lee's contact, a potential buyer declined to purchase the property and the realtor removed the listing and contacted his broker for advice. A week or two later, the realtor again listed the property, this time noting that the buyer had to sign an "addendum stating they understand the title needs to be cleared" and that the seller was "working to clear up title." In the meantime, Lee contacted the deed fraud division of the police department, and in November or December 2016, an officer contacted Clarene's realtor. The realtor testified that the officer he spoke with advised him that Lee's power of attorney was not legitimate because of a signature defect. Lee obtained a new power of attorney from plaintiff to correct the defects in the original document.

---

[2] Evie Adams is the name of plaintiff's adult son who visited him at the prison with Clarene. The parties were unable to locate Evie Adams for trial.

In October or November 2016, defendant saw the property listing. At trial, defendant testified that before making an offer, he was aware that there was an issue with the title. Defendant's realtor contacted Clarene's realtor regarding the title issue, but there was no real discussion regarding the issue because "it was pretty straightforward that it could get taken care of." Both realtors and defendant anticipated that any problems with the title would be resolved by closing. The title commitment was completed by November 14, 2016. Both realtors testified that they received the title insurance commitment before closing and that the commitment did not reveal any issues with the title that needed to be resolved. The property was inspected on December 2, 2016. The closing occurred on December 8, 2016. Three days earlier, on December 5, 2016, Lee recorded an affidavit with the Oakland County Register of Deeds asserting that plaintiff was in federal prison on the date the disputed deed was allegedly signed and contending that the deed was forged. Plaintiff also told the real estate agent not to sell the house because the house belonged to plaintiff, not Clarene.

Defendant began residing in the Southfield house in early 2017. Eventually Lee went to the property and discovered defendant was living there. Subsequently, on October 2, 2017, plaintiff filed suit to quiet title to the property, claiming a superior interest above Clarene's brother, Clarene, and defendant. Among other things, plaintiff alleged that his signature on the disputed deed was a forgery. At trial, plaintiff's lawyer argued that the innocent purchaser doctrine did not apply because there was an unenforceable forged deed. Defendant's lawyer countered that even if the deed was forged, the transfer of the property from plaintiff to Clarene's brother to Clarene was "unquestionably orchestrated by [plaintiff] himself." Defendant's theory of the case was that plaintiff was afraid that the government was going to seize the property and, therefore, transferred it to Clarene in order to hide it.

Following the bench trial, the trial court reached its decision. It found that defendant was a bona fide purchaser who acted in good faith and that plaintiff had conceded as much. Yet, the court also credited plaintiff's testimony that he did not sign the disputed deed. The court found that it would "be hard pressed to determine [Clarene w]as the most honest person on the face of the planet based on all the testimony. But some of what she said is consistent with what he said." The trial court found that Clarene's testimony that plaintiff wanted to transfer title of the property to prevent it from being forfeited was consistent with the timing of the disputed deed and plaintiff's arrest and the strong possibility that it was plaintiff's adult son that had the deed notarized. Accordingly, the trial court found that plaintiff's adult son, or someone else at plaintiff's direction, got their name notarized on the disputed deed within a few days of plaintiff being arrested. It found that plaintiff was "desperate" to keep the asset "from the feds" and, although he did not trust Clarene, "she was the best he had going." The trial court concluded that because Clarene was present when plaintiff was arrested and also was not terribly trustworthy, and because it could not be put in the children's names,[3] plaintiff and Clarene decided to put the property in her brother's

---

[3] This was a misstatement of law. Under the Michigan uniform transfers to minors act, MCL 554.521, *et seq.*, property is transferred to minors by designating an adult that is not the transferor as the custodian of the property for the benefit of the minor children. See, e.g., MCL 554.533(6) ("An interest in real property is recorded in the name of the transferor, an adult other than the

name.  Ultimately, the trial court held that although plaintiff had not executed the disputed deed, he had orchestrated it because he had wanted the transaction to occur and, therefore, ratified the execution of the disputed deed.  On the basis of the ratification and defendant's status as a bona fide purchaser, the trial court dismissed plaintiff's claim and entered a judgment quieting title in defendant's favor.  Plaintiff now appeals.

## II.  QUIET TITLE

### A.  STANDARD OF REVIEW

Plaintiff argues that the trial court erred by quieting title to the disputed property in defendant's favor.  In a quiet title action, we review de novo all legal and equitable claims, but review for clear error the trial court's factual findings.  *Jonkers v Summit Twp*, 278 Mich App 263, 265; 747 NW2d 901 (2008).  A finding of fact is clearly erroneous if it is unsupported by the record or if, on the entire record, we are left with a definite and firm conviction that the trial court made a mistake.  *Dep't of Environmental Quality v Gomez*, 318 Mich App 1, 31; 896 NW2d 39 (2016).

### B.  ANALYSIS

The trial court found that defendant was a bona fide purchaser.  However, if a defendant has actual notice of a plaintiff's claim to the property before purchasing the property, the defendant cannot be a bona fide purchaser.  *Rossman v Ward*, 210 Mich 426, 430-431; 178 NW 41 (1920).  In this case, defendant and both realtors to the transaction testified that they were aware of title issues before defendant made an offer on the property, and not a single person involved in the sale testified that they were unaware that Lee, on plaintiff's behalf, was disputing Clarene's authority to sell the property.  In addition, under Michigan law, the bona fide purchaser doctrine applies when there are competing purchasers.  See MCL 565.29.  Here, there are no competing purchasers, and the issue is whether defendant can take the property despite the existence of a forged deed in his chain of title.  A purchaser acquiring property through a forged deed is not a bona fide purchaser for value.  *Horvath v Nat'l Mtg Co*, 238 Mich 354, 360; 213 NW 202 (1927), quoting *Austin v Dean*, 40 Mich 386 (1879) (" 'There can be no such thing as a bona fide holder under a forgery, whose good faith gives him any rights against the party whose name has been forged or his heirs.' "); *VanderWall v Midkiff*, 166 Mich App 668, 685; 421 NW2d 263 (1988) ("Where a deed is forged, those innocently acquiring interests under the forged deed are in no better position as to title than if they had purchased with notice.").  The trial court, therefore, erred by applying the bona fide purchaser doctrine in this case.

The trial court also erred when it held that plaintiff had ratified the forged deed because the trial court's determination that the disputed deed was forged rendered ratification impossible.  A forged deed is not merely voidable, but void.  See *Dawson v Hall*, 2 Mich 390, 392 n 1 (1852) ("A deed, the possession of which is fraudulently obtained, is as void as a forged deed.").  And contracts that are void *ab initio* may not be ratified.  *Utica State Sav Bank v Village of Oak Park*,

---

transferor, or a trust company, followed in substance by the words: 'as custodian for (name of minor) under the Michigan uniform transfers to minors act'.")

279 Mich 568, 579; 273 NW 271 (1937). Accordingly, the court erred by determining that the forged deed could be—and actually was—ratified by plaintiff.

In sum, neither Clarene's brother nor Clarene obtained any interest in the disputed property. As previously noted, even innocent parties cannot be bona fide purchasers for value against a forged deed. *Horvath*, 238 Mich at 360-361. Accordingly, Clarene's brother could not acquire any property interest under the November 2013 forged quitclaim deed. In addition, "[i]t is clear beyond dispute that the grantee from a party conveying by quitclaim deed acquires the right and title which his grantor had and no other." *Brownell Realty, Inc v Kelly*, 103 Mich App 690, 695; 303 N.2d 871 (1981). Because Clarene's brother received no interest in the property from the forged deed, his quitclaim deed to Clarene could only give her what he had—nothing. *Id*. Consequently, Clarene never obtained any interest in the property and, therefore, had no interest that she could transfer to defendant.

Defendant argues that even if the trial court's decision was erroneous, the clean-hands doctrine provides an alternative basis for affirming the court's decision. "The clean-hands doctrine closes the doors of equity to one tainted with inequitableness or bad faith relative to the matter in which he or she seeks relief, regardless of the improper behavior of the defendant." *Richards v Tibaldi*, 272 Mich App 522, 537; 726 NW2d 770 (2006). And, contrary to plaintiff's arguments, "[t]he clean hands doctrine applies to actions to quiet title." See *McFerren v B&B Investment Group*, 253 Mich App 517, 523; 655 NW2d 779 (2002). In *McFerren*, this Court upheld the trial court's determination that the clean hands doctrine barred the plaintiff's action to quiet title, noting:

> The record supports the [trial] court's determination that plaintiff attempted to conceal assets from the federal government and his former wife and committed a fraud on the court in his divorce by failing to record his deed to the property and representing to others that he merely leased the property. . . . Therefore, it was plaintiff's misconduct that caused the cloud on his title. [*Id*.]

In this case, the trial court found that plaintiff had orchestrated the transfer of the property to Clarene's brother with the aim of hiding the asset from the federal government.[4] The court's finding is supported by the timing of the transfer, which occurred within one week of plaintiff's incarceration on the federal charges. That same week, plaintiff met with Clarene and his adult son. The adult son's name was the name on the identification used by the person who signed plaintiff's name to the quitclaim deed. Further, the court credited Clarene's testimony that plaintiff wanted to hide the property from the federal government, a concern which is supported by the evidence that plaintiff was facing drug-trafficking related charges and that the federal government did, in fact, seize some of his property. Because the court's findings are not clearly erroneous, we

---

[4] In doing so, the trial court did not directly reference the clean hands doctrine. However, in the proceedings below, defendant argued that plaintiff was barred by the clean hands doctrine from seeking to quiet title in his name. And, as the trial court's factual findings are adequate for this Court to review the issue, we elect to do so despite the court's failure to explicitly reference the clean hands doctrine.

conclude that application of the clean hands doctrine supports the trial court's decision to quiet title in defendant's favor. See *Richards*, 272 Mich App at 537.

Affirmed.

/s/ Michael J. Kelly
/s/ Karen M. Fort Hood
/s/ Stephen L. Borrello